Shahram LOLATCHY, Now & Then
Dance Studio, Appellee,

v.

ARTHUR MURRAY, INC., and George
Theiss and Nicholas Theiss and Sam
Costello, Appellants.

Shahram LOLATCHY, Now & Then
Dance Studio, Appellant,

v.

ARTHUR MURRAY, INC., and George
Theiss and Nicholas Theiss and Sam
Costello, Appellees.

Nos. 83–1862, 83–1945.

United States Court of Appeals,
Fourth Circuit.

Argued April 11, 1986.

Decided April 21, 1987.

Rehearing and Rehearing En Banc
Denied June 18, 1987.

Nancy E. Gregor, Baltimore, Md. (James M. Kramon, Kramon & Graham, on brief), for appellants and cross-appellees.

James G. Kolb, Rockville, Md., for appellee and cross-appellant.

Before WIDENER, PHILLIPS, and WILKINSON, Circuit Judges.

WIDENER, Circuit Judge:

The defendants, Arthur Murray, Inc., George Theiss, Nicholas Theiss, and Sam Costello, appeal from a default judgment. They contend that the district court abused its discretion by refusing to set aside the default. We agree and vacate the judgment.

In June 1979, the plaintiff, Shahram Lolatchy, filed this suit in federal district court. The substance of Lolatchy's complaint is that the defendants breached an agreement to grant him an Arthur Murray Studio franchise.

The case was handled by three judges. The first died in April 1980. The case was then assigned to a second judge, and finally to the judge who entered the orders complained of. The case was set for trial twice. The first trial date was on February 9, 1981. The trial was not held on this date, and the record provides no explanation of its cancellation.

The next trial date was set for April 27, 1981 by letter from the court, with the pretrial order due March 23, 1981, and the pretrial conference to be held March 27, 1981. On March 23, 1981, the pretrial conference was rescheduled for April 1, 1981. On March 23 and March 24, 1981, the plaintiff served on the defendants twelve discovery requests consisting of 46 pages, whereupon the defendants filed their motion for a protective order on the ground that a rule of court required discovery to be completed prior to the pretrial conference and that the late filing of the plaintiffs' discovery requests apparently had

made compliance difficult or impossible before the date of the pretrial conference. The defendants, in the meantime, had proceeded with discovery.

Discovery had commenced in this case in late 1980. In March 1981, plaintiff served interrogatories, requests for production of documents, and requests for admission of facts (the requests for discovery above referred to) on each of the four defendants. In April, the district court granted the defendants an extension of time to respond to these discovery requests. Defendants agreed to file responses by May 15, 1981.

On May 14, 1981, defendants' counsel was appointed to a state judgeship. Therefore, he turned his practice over to his brother, who entered an appearance in this case on June 20, 1981. Because of defendants' change in counsel, discovery cutoff was left open. However, after plaintiff's informal attempts to obtain discovery failed, the district court, by letter dated November 20, 1981, required response to the discovery requests within 15 days. When this order was not complied with, the plaintiff moved for default judgment, as well as other sanctions.

In January 1982, the defendants' counsel moved for and was granted an extension of time to respond to the plaintiff's motion. This motion, which was filed late, was the first paper filed with the district court by the new attorney since entering the case seven months earlier. Thereafter, the attorney filed twelve untimely responses to Lolatchy's discovery requests, the first of which was filed January 21, 1982 and the last February 27, 1982.

On March 3, 1982, the district court conducted a hearing on plaintiff's motions and on April 14, 1982 entered the default as to liability against the defendants. Although the district court noted the severity of such a sanction, it stated that the defendants had shown a "continuous disregard of court rules and orders." Defendants' counsel, in a supplemental memorandum opposing plaintiff's motion, had accepted complete blame for the delays in responding to discovery requests. In September 1982, he was replaced as attorney for the defendants by current counsel.

In February 1983, defendants moved, pursuant to Federal Rule of Civil Procedure 55(c), to set aside the default as to liability. The district court denied this motion and rejected the argument that the default judgment should not stand because the parties defendant themselves, as opposed to their past counsel, did not contribute to the delays.

In March 1983, the issue of damages was tried before the district court. Following this trial, the district court entered its money judgment, including costs, in favor of Lolatchy. The defendants appealed, taking issue with the lower court's entry of default on liability, as well as its damage determination. Lolatchy then cross-appealed, also challenging the district court's damage award.

There can be little doubt that the delay in this case was caused in significant part by defendants' second attorney. The death of the first judge, however, and the cancellation of the two trial dates cannot be laid off to that attorney. Indeed, if fault must be laid off with respect to the second trial date, it must be to the plaintiff. There is nothing in the record to contradict the district court's finding that the defendants' themselves, as contrasted with their attorney, were blameless for the delay.

Other facts bear particular attention. There was no missing witness in the case whose testimony was made unavailable by the delay; there was similarly no dead witness; neither were there any records made unavailable by the delay, nor was there any evidence for the plaintiff which could have been presented earlier, the presentation of which was prevented by the delay. Prior to the time of the hearing on the motion for default in the district court on March 3, 1982, and of course the time a month later that the order was entered granting default as to liability on April 14, 1982, the defendants had responded to all discovery requests made by the plaintiff, and, as far as the record shows, the case was ready for trial. So the record shows without contradiction that the plaintiff suffered no

prejudice on account of the delay. We grant that the plaintiff had been somewhat frustrated in his efforts to bring the case to trial, but a part of that delay was of his own making. And, on the day the default judgment was entered as to liability, the only thing remaining to be done was to set a trial date. Instead of setting the case for trial, the court entered its default as to liability.

In this circuit's most recent case on this question, we said that "justice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings." *United States v. Moradi*, 673 F.2d 725, 728 (4th Cir.1982). In *Moradi*, a naturalized American citizen attempted to enter the United States with carpets obtained in his native country of Iran. The United States customs service denied duty-free entry and seized the rugs. Moradi retained counsel to negotiate with the United States. After negotiations proved unsuccessful, the United States filed suit in federal district court. After service of the complaint, Moradi's attorney timely served an answer on the federal government's counsel and the clerk of the court. However, citing non-compliance with local rules, the clerk of the court refused to accept the answer and returned the answer to the office of Moradi's attorney.

When the answer was returned to Moradi's attorney's office, he was absent and the return of the answer by the clerk did not come to his attention. Thereafter, counsel for the United States, pursuant to instructions of the district court, notified Moradi's attorney's office that a pre-trial conference had been scheduled for a certain date. Again, Moradi's attorney apparently was not apprised of this message by his staff and consequently he failed to appear. The government then moved for and was granted a default judgment. Moradi appealed after his motion for Rules 55(c) and 60(b) relief was denied.

We reversed. We reasoned that "[t]raditionally, we have held that relief from a judgment of default should be granted where the defaulting party acts with reasonable diligence in seeking to set aside the default and tenders a meritorious defense."[1] Id. at 727. We based our reversal in *Moradi* largely on the lack of the party's personal responsibility for the failures of his counsel to answer punctually or to appear at the pre-trial conference. *Moradi*, 673 F.2d at 728.

In *Moradi*, we also set out considerations to be taken into account in deciding whether or not to set aside judgment by default in such a case: the personal responsibility of the party, the prejudice to the party, whether there is a history of dilatory action, and the availability of sanctions less drastic. 673 F.2d at 728.

In the case at hand, the defendants are blameless. There has been no prejudice to the plaintiff. Any dilatory action was on the part of the attorney, not the defendants, it was not drawn out, and continued at the most for a time span of only a few months. No sanctions short of default were attempted by the district court. The only sanction it ever imposed was default as to liability.

In these circumstances, we are of opinion the district court abused its discretion. The attorney, for example, could have been charged with all costs and expenses attendant to the delay, including attorneys' fees, or even held in contempt of court. There is nothing in the record to suggest that either of these actions would not have promptly cured his failure to respond. Indeed, the motion for judgment by default brought forth responses to plaintiff's requests for interrogatories, and an examination of the papers in the record filed by the plaintiff with the district court following the defendants responses show that the plaintiff made little or no objection to the responses filed by the defendants or claim he was not ready for trial, only claiming that there had been a delay in his getting ready. Such

---

1. There is no question in this case of the assertion of a meritorious defense or of due diligence in seeking to have the default set aside.

frustration, we think, while it may be a sufficient reason for sanctions short of default judgment, should not suffice as a reason for depriving the defendants of their day in court.

In sum, "an extensive line of decisions" has held that Federal Rule of Civil Procedure 55(c) must be "liberally construed in order to provide relief from the onerous consequences of defaults and default judgments." *Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir.1969). And, although the decision whether to set aside a default judgment is one committed to the sound discretion of the district court, see Fed.R.Civ.P. 55(c), *Moradi*, 673 F.2d at 727, "an abuse of discretion in refusing to set aside a default judgment 'need not be glaring to justify reversal.'" *Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir.1980) (quoting *Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372, 374 (D.C.Cir.1980)); accord

*Davis v. Musler*, 713 F.2d 907, 913 (2d Cir.1983). We find an abuse of discretion here, and hold that there has indeed been "good cause shown" to set aside the entry of default. F.R.C.P. 55(c).

Accordingly, we vacate the judgment of the district court and remand for proceedings consistent with this opinion. That action makes it unnecessary to examine the other questions raised in the appeal and cross-appeal.

No. 83–1862 is VACATED AND REMANDED.

No. 83–1945 (the cross appeal) is DISMISSED WITHOUT PREJUDICE.[2]

WILKINSON, Circuit Judge, dissenting:

The district court did not abuse its discretion. It found the defendants' failure to make timely discovery "wilful" and their

---

**2.** The dissenting opinion depends principally on *National Hockey League v. Metro Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), and *Rabb v. Amatex Corp.*, 769 F.2d 996 (4th Cir.1985). The applications of the principles advocated in the dissenting opinion may well have been justified in those cases. The dissenting opinion does not discuss, however, the addition in each of those cases of a salient fact not present here. That fact is that in *National Hockey League*, as well as in *Rabb*, the district court explicitly warned the defaulting party in advance of the consequence of default, which was dismissal. *In re Professional Hockey Anti-Trust Litigation*, 63 F.R.D. 641, 647 (E.D.Pa. 1974); *Rabb*, 769 F.2d 996, 997. No such warning was given in this case; had there been, another case would be presented.

We note again other aspects of the majority opinion not taken account of in the dissent, each of which is of more than a little consequence. First, the case was handled by three district judges which was bound to have contributed to the delay; second, by the time the motion to dismiss was decided, the case was ready to be tried; and, third, the plaintiff was not entirely blameless and contributed to the delay.

Finally, the dissent apparently faults defendants' present attorneys, and certainly defendants, for "wait[ing ...] another ten months" to file their motion under Rule 55(c), thus implying that nothing was done until February 24, 1983, when the motion at issue here was filed. With respect, we hardly think this presents an accurate picture of what happened. The defendants' present attorneys entered their appearance September 8, 1982. Prior to that time, on September 3rd, they had had a meeting with the

district judge about the case at which time the court had made it clear that it would entertain no further argument on the subject of default. Overlooked, however, in the dissent is the fact that the damages aspect of the case had not yet been tried. On October 21, 1982, the parties agreed upon, and the court entered a scheduling order setting the date for trial of damages for the week of March 7, 1983. The order provided for discovery deadlines, times for filing memoranda of authorities, motions, a status report, a pre-trial order, and pre-trial conference. Between September 8, 1982 and March 9, 1983, the day the damages trial commenced, the defendants' attorneys participated in at least the following actions with respect to this case:

October 21st, scheduling order;
October 22nd, notice to take depositions;
November 1st, order extending time to file response;
November 19th, filing damages memorandum;
November 24th, notice to take depositions;
December 27th, motion to compel discovery, with memorandum;
December 27th, motion to compel discovery, with memorandum;
December 27th, notice to take depositions;
December 29th, extension of discovery schedule;
January 4, 1983, notice to take depositions;
January 4, 1983, order to postpone depositions at plaintiffs' request.

Additionally, the attorneys participated in depositions at least on November 5, 1982, December 6, 1982, December 21, 1982, and January 10, 1983. So, we suggest the attorneys were both diligent and busy and neither they nor the defendants should be faulted.

disregard of the court's order "flagrant." That finding is well supported by the record. The majority's decision to vacate the judgment encourages litigants to manipulate trial dockets and indulges the tendency of defendants to delay. I dissent from this attempt to manage from on high the disciplinary powers of the district court.

### I.

Here the facts justify the entry of default. Although default is indeed a heavy sanction, it is within the range of sanctions contemplated for failure to obey an order to compel discovery. Fed.R.Civ.P. 37(b)(2)(C). The question for a reviewing court is not whether it would have entered a default, but whether the district court abused its discretion in doing so. With all due respect for the majority, this defaulting party should not have been bathed on appeal in such a blameless light.

In March of 1981, plaintiff filed his discovery requests. In June, defendants retained new counsel. Plaintiff's lawyer tried repeatedly over the summer and early fall to communicate with defendants' counsel about the discovery requests. These attempts were ignored.

On October 13, plaintiff moved for an order compelling discovery. No response from defendants' counsel to that motion was forthcoming.

On November 20, the trial court granted the motion and ordered defendants to respond to discovery within fifteen days. Defendants did nothing.

On December 10, plaintiff moved for judgment by default and summary judgment. The time to respond to these motions elapsed on December 28 without communication of any sort from the defendants.

Finally, on January 15, 1982, the first word to either the court or opposing counsel came from defendants' attorney. It was a motion for an extension of time in which to respond to the discovery requests. The court granted that motion.

It later held a hearing on plaintiff's motion for judgment by default. In granting that judgment as to liability, the trial judge observed:

> Plaintiff and his counsel have been most understanding throughout this litigation, and it was only after defendant's counsel chose to ignore counsel's letters and messages and the court's order that sanctions were sought. Clearly this is not a case of a litigant seeking to glorify technical compliance with the rules of civil procedure. Nor is this a case of a litigant seeking sanctions for incomplete or evasive responses to discovery. Defendant's refusal to make discovery or communicate with plaintiff jeopardized plaintiff's entire array of discovery requests and prejudiced him in the preparation of any part of his case.

### II.

The majority would excuse this deplorable chronology because there were no "dead" or "missing" witnesses and no evidence made unavailable by delay. This view ignores the intangible impact of delay on the quality of justice, and the frustrations imposed on courts, opposing counsel, and other litigants by a party that regards court orders in a leisurely and advisory light. It also ignores the very real disadvantage that a defendant can place upon a plaintiff by dragging out the pretrial process and hence delaying the award and collection of any judgment.

I agree that caution must be exercised when the default appears to be that of the attorney. *United States v. Moradi*, 673 F.2d 725, 728 (4th Cir.1982). But I do not subscribe to the breadth this admonition achieves in the hands of the majority. If attorneys can neglect their clients' business with "no ill effects" to clients, "complete chaos in judicial proceedings will surely result." *Barber v. Turberville*, 218 F.2d 34, 38 (D.C.Cir.1954) (Prettyman, J., dissenting). After all, it is *the attorney* with whom courts and opposing litigants must deal in the conduct of a lawsuit. Attorneys may understandably be reluctant to blame clients for delay, even when there may be

grounds to do so. The district courts should not be relegated to citing attorneys for contempt, nor should they constantly have to unravel attorney-client relationships for respective shares of fault.

Moreover, prejudice to the plaintiff is in no way lessened by the fact that opposing counsel, rather than the opposing party, is responsible for delay. Here the plaintiff is a party of limited resources, not, as in *Moradi*, the federal government. That is reason enough to adhere to the general rule that "the neglect of counsel will be imputed to the client and that a litigant has no right to relief simply because his attorney was responsible for the default." C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2693, at 489 (1983).

The facts of this case are similar to those before the Supreme Court in *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976). The district court in *National Hockey League* invoked Fed.R. Civ.P. 37(b)(2)(C) to dismiss an antitrust suit because the plaintiffs failed to comply with a discovery deadline. The court of appeals determined that the district court abused its discretion because the record showed some "extenuating factors," including a change of attorney. The Supreme Court reversed the court of appeals in a *per curiam* opinion. I believe the comments made by the Supreme Court regarding the appellate court's decision in *National Hockey League* apply equally to the majority opinion in today's case:

> There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. . . .

> But [this sanction] must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. If the decision of the Court of Appeals remains undis-

turbed in this case, it might well be that *these* respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts.

427 U.S. at 642–43, 96 S.Ct. at 2780–81. *See also Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763–64, 100 S.Ct. 2455, 2562–63, 65 L.Ed.2d 488 (1980).

The facts of today's case are also similar to those before this circuit in *Rabb v. Amatex Corp.*, 769 F.2d 996 (4th Cir.1985). There, too, a party disregarded a discovery deadline set by the district court. Pursuant to Fed.R.Civ.P. 37(b)(2)(B), the district court ordered the preclusion of the party's evidence and entered summary judgment against it. Rather than looking to the relative fault of litigant and counsel, we instead upheld the district court on the ground that counsel had acted in "full awareness of and utter disregard for the district court's discovery timetable." 769 F.2d at 1000.

In footnote 2 of its opinion, the majority attempts to distinguish *National Hockey League* and *Rabb* on the ground that "the district court explicitly warned the defaulting party in advance of the consequence of default, which was dismissal." Nothing in *National Hockey League* or *Rabb* suggests that fact was decisive. When a party wilfully and flagrantly disregards a court order to make discovery, the party is *already* put on notice by the terms of Rule 37. Here, of course, the defendant not only disregarded the discovery order but also did not deign to make a timely response to plaintiff's motion for default judgment. To reverse the district court for failing to remind the defendant about the possibility of default would be worse than redundant; it would give the defendants yet another opportunity for delay.

### III.

After the district court entered default on liability in April of 1982, defendants waited until February of 1983 to file their

motion to set aside the default under Rule 55(c). This ten month delay provides further support for the district court's refusal to grant the motion.

Fed.R.Civ.P. 55(c) does not impose a specific time limit. We have held, however, that a district court acting on a Rule 55(c) motion can take into account whether the moving party acted with "reasonable promptness." *Consolidated Mansonry & Fireproofing, Inc. v. Wagman Construction Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). In *Consolidated Masonry*, we found no abuse of discretion where the district court refused to grant a Rule 55(c) motion after a delay of approximately two and one-half months. Similarly, the Second Circuit in *Dow Chemical Pacific, Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 336 (2d Cir.1986) found no abuse of discretion where the district court refused to grant a Rule 55(c) motion partly on the basis of the defendants' seven month delay in filing.

The ten month delay in this case is unreasonable. Defendants waited to file until two weeks before the scheduled date of the trial on damages. The majority apparently believes that the defendants required this much time to prepare their submission, a one-page motion and a two-page memorandum in support of it.

I cannot agree with the significance that the majority places on "the fact that the damages aspect of the case had not yet been tried." An entry of default is by its nature interlocutory; final judgment will frequently await further proceedings. The pending trial on damages in no way justifies the defendants' delay in moving to set aside the entry of default on liability. Indeed, if that fact has any significance at all for the timeliness of defendants' motion, its significance should be the opposite of what the majority has given it. Where a district court has entered default on liability and reserved the damages issue for trial, it is especially desirable that the default be reconsidered at the earliest possible date; if the district court grants the motion to set aside the default on liability, the scope of the trial changes significantly.

## IV.

What the Supreme Court has said of the trial judge's role as a finder of fact can be said of the trial judge's role in supervising pretrial discovery. One important reason for deference to the trial judge lies in the "superiority of the trial judge's position" to supervise the litigants and assess their good faith. With experience in that role comes expertise. *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

The majority pays lip service to the abuse of discretion standard, but it usurps the trial court's role on appeal. According to the majority, "there is nothing in the record to suggest that [lesser] sanctions would not have promptly cured [defendant's] failure to respond." Apparently, the majority would limit district courts to the sanctions minimally necessary to induce compliance with the particular order that was disregarded. Two difficulties with this view exist. First, the Supreme Court rejected it in *National Hockey League*, as noted earlier. Second, the district court did consider the alternatives offered by the majority and fully explained why they were not used:

As to sanctions other than default that might be applied in this case, the Court finds that an award of attorney fees does not adequately remedy the continuous disregard of court rules and orders that defendants have imposed on plaintiff, this Court, and to an extent, other litigants desiring to have their cases heard. An order pursuant to Rule 37(b)(2)(A), that matters regarding the Court's prior order be taken as established, is not a less drastic sanction than default in this case, since plaintiff's outstanding discovery requests at the time of the Court's order encompassed the entire issue of liability and arguably the issue of damages. Similarly, an order pursuant to Rule 37(b)(2)(B), refusing to allow defendants to support designated defenses or oppose designated claims, is an unworkable alternative in light of the breadth of the discovery requests in issue. Furthermore, a contempt order

pursuant to Rule 37(b)(2)(D) would have no rational relationship to the conduct in question at this stage of the proceedings. Under the circumstances of this case, the Court finds that default on the issue of liability is the most fitting sanction available to it under Rule 37.

Despite all this, the majority finds the district court abused its discretion. This holding penalizes the diligent and rewards the dilatory. I respectfully dissent.