53 F.3d 36
 31 Fed.R.Serv.3d 1212
 Michael HATHCOCK; Sandy Hathcock, Plaintiffs-Appellees,
v.
NAVISTAR INTERNATIONAL TRANSPORTATION CORPORATION,
Defendant-Appellant.
Product Liability Advisory Council, Incorporated; Lawyers
for Civil Justice, Amici Curiae.
Michael HATHCOCK; Sandy Hathcock, Plaintiffs-Appellees,
v.
Arthur P. GREENFIELD, Defendant-Appellant,
and
Navistar International Transportation Corporation, Defendant.
Product Liability Advisory Council, Incorporated; Lawyers
for Civil Justice, Amici Curiae.
 Nos. 94-1021, 94-1148.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 7, 1994.
Decided May 4, 1995.
 
 ARGUED: Stephen G. Morrison, Nelson, Mullins, Riley & Scarborough, Greenville, SC, for Appellant Navistar; Byron Attridge, King & Spalding, Atlanta, GA, for Appellant Greenfield. Douglas Franklin Patrick, Sr., Covington, Patrick, Hagins & Lewis Greenville, SC, for Appellees. ON BRIEF: George K. Lyall, Nelson, Mullins, Riley & Scarborough, Greenville, SC; Kenneth S. Geller, Timothy S. Bishop, Mayer, Brown & Platt, Chicago, IL, for Appellant Navistar; Katharine F. Darnell, King & Spalding Atlanta, GA; G. Dewey Oxner, Jr., Haynsworth, Marion, McKay & Guerard, Greenville, SC, for Appellant Greenfield. Rosewell Page, III, E. Duncan Getchell, Jr., Robert L. Hodges, McGuire, Woods, Battle & Boothe, Richmond, VA, for Amicus Product Liability Advisory Council. Alfred W. Cortese, Jr., Kathleen A. Blaner, Nancy Kao, Kirkland & Ellis, Washington, DC, for Amicus Lawyers for Civil Justice.
 Before ERVIN, Chief Judge, WILKINSON, Circuit Judge, and PHILLIPS, Senior Circuit Judge.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Navistar International Transportation Corp. ("Navistar") appeals from a six million dollar default judgment in favor of Michael Hathcock and Sandy Hathcock entered by the district court as a sanction for alleged discovery abuse. Navistar contends that the district court's order violated the Federal Rules of Civil Procedure and the United States Constitution. Navistar also argues that the court abused its discretion, that its judgment rested on clearly erroneous findings of fact, and that the presiding judge should be recused and his order vacated under 28 U.S.C. Sec. 455 (1993). Appellant Arthur Greenfield, an attorney for Navistar, appeals from the personal sanctions that the district court levied against him. Because the district court abused its discretion by imposing the default sanction against Navistar and the district court judge should have recused himself from the matter, we vacate the default judgment of the district court and remand the case to be heard by a different judge. Because the penalty against Greenfield violated his due process rights and rested on a clearly erroneous finding of fact, we vacate and reverse the sanction imposed on him.
 
 I.
 
 2
 On December 7, 1989, Michael Hathcock was burned severely by a fire inside the cab of his Loadstar truck, which was manufactured by Navistar. The fire occurred after another truck broadsided Hathcock's vehicle on the passenger side. The Loadstar's fuel tank was located underneath the passenger side of the cab and was connected inside the cab to the fuel intake pipe by a rubber hose. Immediately after the accident, Michael Hathcock filed a worker's compensation action. Navistar, involved in a factually similar case at the time, learned of the Hathcock accident and opened an investigative file on the incident.
 
 
 3
 On November 6, 1992, Michael Hathcock and Sandy Hathcock filed product liability suits against Navistar in the United States District Court for the District of South Carolina. They alleged that the truck's fuel system was designed defectively, which led to the post-collision fire that caused Michael's injuries. The district court entered a general order, pursuant to Federal Rule of Civil Procedure 16(b), establishing a schedule for discovery on March 4, 1993.[1] On March 10, a consent order revising the deadline for discovery was issued.[2] Finally, on September 1, the court entered a third scheduling order extending the discovery period up to the time of trial.[3] No other discovery orders were entered in this case.
 
 
 4
 In the course of discovery, the Hathcocks requested information regarding prior claims and suits against Navistar that involved similar accidents, as well as the names of witnesses knowledgeable about the company's investigation of earlier claims. The parties offer radically different accounts of the extent to which Navistar complied with plaintiffs' requests. The Hathcocks complain that Navistar withheld discoverable information it possessed regarding at least three previous suits, and that such information was produced only after their counsel notified Navistar that he had discovered the other litigants. Navistar, which responded to the Hathcocks' interrogatories in a timely fashion but objected to some specific requests, asserts that the omitted cases were not similar to the Hathcocks' because the other cases involved different types of vehicle models and/or collisions. Navistar also contends that some of the information sought was destroyed pursuant to a standing document retention policy, forcing it to rely on opposing counsel from previous suits for the documents it subsequently produced.
 
 
 5
 The parties also dispute the thoroughness and sincerity of Navistar's response to the Hathcocks' request for the names of individuals knowledgeable about claims based on the design of the Loadstar's fuel system. Navistar identified its "product integrity group" and suggested that the Hathcock's depose group member Erwin Franke. When asked during a deposition if he had been involved in opening Navistar's investigation of the Hathcock case, Franke stated that he had not. He then indicated that Navistar employee Tom Nelson had helped to initiate the inquiry. At his deposition, Nelson expressed a belief that Franke had opened a file on the Hathcock accident in July of 1990. Later, Franke submitted an affidavit which claimed further research revealed that another employee, Gary Whitcomb, actually had opened the file.
 
 
 6
 The incongruity among these accounts is significant because of a motion made by Navistar to dismiss the suit based on alleged spoliation of critical evidence, because plaintiffs had removed the fuel system from Michael Hathcock's truck. Asserting it never had an opportunity to inspect the vehicle, Navistar's attorney Arthur Greenfield argued before the court that the company had no reason to suspect a potential claim at the time, something the file's existence arguably belies. Greenfield suggested to the court that
 
 
 7
 when you realize what the facts of this case were, you take a look at the condition of the frame of this truck, no one in their right mind would have thought that somebody, some day, was going to assert a claim with regard to a design defect of a fuel system in this accident.
 
 
 8
 In contrast, at Nelson's deposition, Greenfield's law partner objected to a question concerning the contents of the file:
 
 
 9
 I am going to object to that question, too, Doug, because I think it again goes to the work product of the client in connection with the litigation that was then pending and which they had been placed on notice of the possibility of future litigation.
 
 
 10
 On July 23, 1993, the Hathcocks filed a motion for default or, in the alternative, a motion to compel discovery and impose sanctions. Shortly thereafter, the district court judge directed the Hathcocks' counsel to prepare the factual predicate to a default order. On October 7, the court entered a default judgment against Navistar and ordered a jury trial on the issue of damages. Prior to the order's issuance, Navistar had no communication with the judge, although the Hathcocks' attorney did inform Navistar's counsel of the court's intention.
 
 
 11
 In its order, the district court concluded:
 
 
 12
 [I]t is clear that the pattern of Navistar, when viewed as a whole, shows a consistent and intentional course of conduct utterly contemptuous of the rules of discovery and the inherent powers of this Court, all of which are designed to insure fair trials to the litigants.
 
 
 13
 The district court determined that nothing short of default was appropriate and that lesser sanctions would "do nothing more than delay the trial, increase the burden of litigation, and ultimately fail to provide to the Plaintiffs a fair day in trial." In addition, the court held that Navistar's attorney Greenfield was guilty of "deliberate and wilful deception" and sanctioned him personally by imposing a $5,000 fine.
 
 
 14
 After the judgment was entered, Greenfield filed a Motion to Alter or Amend the Sanctions Order pursuant to Federal Rule of Civil Procedure 59(e). After conducting a hearing on the matter, the court denied Greenfield's motion because his previous representation had no "basis in truth." Navistar filed a motion to vacate the default order and to recuse the district court judge pursuant to 28 U.S.C. Sec. 455. As evidence of bias, Navistar offered the judge's ex parte communication with the Hathcocks' counsel and the court's issuance of an order allegedly prepared by plaintiffs' attorney. At the judge's behest, his law clerk submitted a responding affidavit stating that the court in large measure had adopted the factual predicate from the proposed order drafted by the Hathcocks' counsel, but had drawn independent legal conclusions. After the district court denied Navistar's recusal motion, the parties stipulated to six million dollars in damages, and the court entered the final order from which Navistar appeals.
 
 
 15
 As additional proof of the inherent bias of the district court judge against tort defendants in general, and appellants in particular, Navistar offers a speech he made to the South Carolina Trial Lawyers Association Auto Torts Seminar on December 3, 1993, while a jury trial on the issue of damages was pending in the case at bar. Many of the judge's remarks were pointedly hostile toward defendants and defense counsel. During his presentation, for example, he stated: "[E]very defense lawyer objects to the net worth coming in [on the issue of punitive damages] and all of that. Then after that verdict you can get up there and call them the son-of-a-bitches that they really are." In addition to other rather inflammatory remarks, the judge characterized three pro-plaintiff judicial decisions in the following way:
 
 
 16
 [W]hat makes [these decisions] so great is that the lawyers that represent these habitual defendants, they met these three decisions with about the same degree of joy and enthusiasm as the fatted calf did when it found out the prodigal son was coming home. That indicates that that's some pretty good decisions.II.
 
 
 17
 As a preliminary matter, Navistar contends that the imposition of a default sanction for the violation of a Rule 16 scheduling order is erroneous as a matter of law, because such a sanction is not authorized under Rule 37 of the Federal Rules of Civil Procedure. The district court, in contrast, concluded that it possessed the requisite authority to enter a default sanction against Navistar "under Fed.R.Civ.P. 37(b)(2) based upon the violation of its[Scheduling] Orders" and "under Rule 37(d) for bad faith failure to make proper answer to discovery." Though we vacate the district court's judgment against Navistar on other grounds, we agree with the basic premise that a default sanction can, under certain circumstances, be an appropriate response to the violation of a Rule 16 order. After all, the express terms of Rule 37 permit a trial court to impose sanctions when "a party fails to obey an order to provide or permit discovery." Fed.R.Civ.P. 37(b)(2). Furthermore, in Rabb v. Amatex Corp., 769 F.2d 996 (4th Cir.1985), we adopted the view that " '[a]mong the sanctions now authorized by Rule 16 are the penalties for violation of discovery orders contained in Rule 37(b)(2)(B), (C), and (D),' " which include default. Rabb, 769 F.2d at 999 (quoting 3 MOORE'S FEDERAL PRACTICE p 16.32 (1985)) (affirming summary judgment as sanction against plaintiff, after counsel failed to respond in a timely fashion to defendant's interrogatories). Regarding a district court's potential authority under Rule 37(d) to impose a default sanction for insufficient compliance with a discovery order, rather than for a complete failure to respond, we have upheld the imposition of sanctions for a misleading answer to an interrogatory regarding the identity of a defendant's expert witness. See Basch v. Westinghouse Elec. Corp., 777 F.2d 165, 174-75 (4th Cir.1985). Based on Basch, there is support for the district court's determination that Rule 37(d) authorizes sanctions for something less egregious than total non-responsiveness. But see 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, FEDERAL PRACTICE & PROCEDURE Sec. 2291, at 718-20 (collecting cases establishing that Rule 37(d) is inapplicable in the absence of a "serious or total failure to respond to interrogatories").
 
 
 18
 Our inquiry, however, is not only whether a default sanction might be permissible as a matter of law. While the imposition of sanctions under Rule 37(b) lies within the trial court's discretion, "[i]t is not ... a discretion without bounds or limits." Wilson v. Volkswagen of Am., 561 F.2d 494, 503 (4th Cir.1977), cert. denied, 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978). In the case of default, the "range of discretion is more narrow" than when a court imposes less severe sanctions. Id. In particular, this court has emphasized the significance of warning a defendant about the possibility of default before entering such a harsh sanction. As we recently noted in a slightly different context, a party "is entitled to be made aware of th[e] drastic consequence[s] of failing to meet the court's conditions at the time the conditions are imposed, when he still has the opportunity to satisfy the conditions and avoid" the sanction. Choice Hotels Int'l v. Goodwin & Boone, 11 F.3d 469, 473 (4th Cir.1993). In Lolatchy v. Arthur Murray, Inc., 816 F.2d 951 (4th Cir.1987), reversing a default sanction as an abuse of discretion, a panel of this court considered the failure to warn a "salient fact" which distinguished that case from those in which default was appropriate. Id. at 954 n. 2. According to the Lolatchy court, if a warning had been given, "another case would be presented." Id. Because the court had issued only general scheduling orders in the case at bar, the lack of any advance notice is especially problematic.
 
 
 19
 Another factor we have emphasized in assessing the propriety of a default sanction is prejudice to the discovering party. See Wilson, 561 F.2d at 504 ("[T]he exercise of the power should be confined to the 'flagrant case' in which it is demonstrated that the failure to produce 'materially affect[s] the substantial rights of the adverse party' and is 'prejudicial to the presentation of his case.' " (quoting 8 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE Sec. 2284, at 767-72)). In the instant case, prejudice to the Hathcocks is to some extent limited because they possessed at least some knowledge of the allegedly discoverable materials Navistar failed to produce.
 
 
 20
 In addition to examining the issue of prejudice, we have also encouraged trial courts initially to consider imposing sanctions less severe than default. Id. Unlike the situation in Mutual Federal Sav. & Loan Ass'n v. Richards & Assoc., 872 F.2d 88, 93 (4th Cir.1989), where costs and attorneys' fees had already been awarded before default was deemed appropriate, in this circumstance, the district court imposed no lesser sanction as a preliminary deterrent. In fact, the court did not even issue a specific order to compel the discovery of materials to which Navistar objected.
 
 
 21
 Under these circumstances, the imposition of a default sanction amounted to an abuse of the district court's discretion, and its order must be vacated on that basis. Our decision should not, however, discourage the district court from examining closely on remand the disturbing allegations of serious discovery abuse by Navistar and responding with appropriate sanctions if the situation warrants. At this point, we do not decide whether the district court's findings regarding Navistar's allegedly deceitful behavior were clearly erroneous, nor do we address Navistar's contention that the default sanction violated its due process rights.
 
 III.
 
 22
 Section 455(a) of title 28 of the United States Code provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." As we have previously explained, " '[t]he question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his impartiality on the basis of all the circumstances.' " Aiken County v. BSP Div. of Envirotech Corp., 866 F.2d 661, 679 (4th Cir.1989) (quoting Rice v. McKenzie, 581 F.2d 1114, 1116 (4th Cir.1978)). On these facts, a reasonable person might justifiably doubt the district court judge's objectivity. Though probably insufficient to merit recusal in isolation, see id., the judge's ex parte contacts requesting the Hathcocks' counsel to draft at least the factual basis of a default order, and possibly its legal conclusions as well, do not foster an impression of objectivity, particularly since Navistar was never given an opportunity to respond to the proposed order. We are also troubled by the judge's willingness to involve the court as a participant in ongoing litigation by directing his law clerk to file an affidavit in response to the Hathcocks' recusal motion. Even more telling, the judge's blunt remarks at the auto torts seminar--while a jury trial on the issue of damages in this case was pending--reflect a predisposition against Navistar and other product liability defendants. Cf. Nicodemus v. Chrysler Corp., 596 F.2d 152, 155 (6th Cir.1979) (disqualifying judge who, during oral ruling, called the defendant "a bunch of villains ... interested only in feathering their own nests at the expense of everybody they can").[4] Overall, the appearance of impropriety in this case requires that the presiding district court judge be recused and his order vacated pursuant to 28 U.S.C. Sec. 455(a).[5] Accordingly, we remand this matter for reconsideration of the Hathcocks' motion for discovery sanctions against Navistar, with instructions that the case be assigned to another judge.
 
 IV.
 
 23
 Finally, we examine the personal monetary sanction imposed on Navistar's attorney, Arthur Greenfield. Notably, even the Hathcocks did not request such a sanction in their Motion for Default, nor do they take a position in favor of that penalty on appeal. Appellant Greenfield contends (1) that imposition of the $5000 fine without prior notice or a hearing violated his constitutional rights under the Fifth Amendment's Due Process Clause, (2) the sanction constituted an abuse of the court's discretion under Rule 37, and (3) the court's finding that he was guilty of "deliberate and wilful deception" is clearly erroneous. We agree with each of these contentions.
 
 
 24
 This court has recognized that a Rule 37 fine is effectively a criminal contempt sanction, requiring notice and the opportunity to be heard. Buffington v. Baltimore County, 913 F.2d 113, 133-35 (4th Cir.1990), cert. denied, 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 216 (1991). In this instance, Greenfield had no indication that sanctions might be imposed against him until the district court actually entered its default order. Additionally, other than the one sentence paragraph imposing the sanction for Greenfield's "intentional deception," the district court's thirty-three page opinion makes only two brief references to the attorney. Each remark mentions the position Greenfield took during the hearing on the spoliation motion that Navistar did not anticipate litigation to arise from the Hathcock accident. The district court attempted to address these constitutional difficulties by conducting a post-judgment hearing pursuant to Greenfield's Motion to Alter or Amend the Sanctions Order. As the Federal Circuit has noted, however, "reconsideration after a decision is rendered is not a substitute for a pre-decision hearing, when such hearing is otherwise required." Beatrice Foods Co. v. New England Printing & Lithographing Co., 899 F.2d 1171, 1177 (Fed. Cir.1990).[6] Because Greenfield was given neither notice nor the opportunity to be heard before being slapped with what is effectively a criminal contempt sanction, the attorney's constitutional rights under the Fifth Amendment's Due Process Clause were violated.
 
 
 25
 Furthermore, it was clear error for the district court to conclude that Greenfield engaged in "wilful deception." Although counsel's statements might have been somewhat unclear and certainly were phrased in terms most beneficial to Navistar, they do not represent an overt attempt to deceive the court. At the time of the spoliation hearing at issue, Greenfield did not know when Navistar had opened its file on the Hathcock accident or what the file contained. A representation to the court that Navistar did not anticipate a claim being filed against it should not be considered intentionally deceptive, particularly in light of the substantial time the Hathcocks actually waited to file their complaint. Also, Greenfield's statement is not necessarily inconsistent with the deposition objection of his co-counsel that the district court accepted as proof of Greenfield's deception. At the time Greenfield's partner indicated that the Hathcock file contained materials prepared in anticipation of litigation, the Hathcocks had already filed their lawsuit. This fact does not necessarily discredit Greenfield's assertion that Navistar did not expect a lawsuit when it originally opened the file. Overall, the facts do not support the district court's finding that Greenfield wilfully deceived the court.
 
 
 26
 In any event, imposition of the fine against Greenfield constitutes an abuse of the court's discretion for essentially the reasons that the judgment against Navistar does. Though not actually a default judgment, the severity of receiving a personal sanction of this nature calls for prudence and discretion, something the district court failed to display in this matter.
 
 
 27
 Because the sanction against Greenfield constituted an abuse of the court's discretion, rested on clearly erroneous findings, and infringed on appellant's due process rights, we reverse.
 
 V.
 
 28
 For the reasons discussed above, we vacate the default judgment entered against appellant Navistar and remand this matter for further consideration, with instructions that it be assigned to another district court judge. As to appellant Greenfield, the judgment of the district court is reversed.
 
 
 29
 No. 94-1021--VACATED AND REMANDED.
 
 
 30
 No. 94-1148--REVERSED.
 
 
 
 [1]
 In full, the original order read as follows:
 Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, the following time limits are established in this case:
 
 
 [1]
 Motions to join other parties and to amend the pleadings shall be filed no later than April 5, 1993;
 
 
 [2]
 All other motions, except those to compel discovery, those made pursuant to Rule 12 of the Federal Rules of Civil Procedure, and those relating to the admissibility of evidence at trial, shall be filed no later than April 5, 1993
 
 
 [3]
 Discovery shall be completed no later than April 5, 1993. By mutual agreement, discovery may be extended up to the time of trial, provided trial is not delayed
 
 
 [4]
 Case will be scheduled for trial during the term of court beginning April 12, 1993
 
 
 [2]
 This order established that"[a]ll discovery shall be completed by June 1, 1993." The time limit could "be extended by mutual consent of the parties."
 
 
 [3]
 In its entirety, this order stated:
 Pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, as implemented by Local Rule 7.00, D.S.C., the following time limits are established in this case:
 
 
 [1]
 That discovery be permitted through September 15, 1993, or until the call of this case for trial
 
 
 [2]
 That motions relating to discovery shall be filed no later than September 1, 1993 and motions relating to admissibility of evidence can be filed until the call of the case for trial
 
 
 [3]
 This case is subject to be called for trial during the [sic] October, 1993
 
 
 [4]
 The judge's convention speech is almost certainly extrajudicial, or based on a prejudice not originating from the instant litigation, thereby fulfilling the Supreme Court's directive that demonstrated bias must generally derive from an "extrajudicial source." See Liteky v. United States, --- U.S. ----, ----, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994)
 
 
 [5]
 We note, nonetheless, that this course of action is not taken lightly. Nothing in our opinion should be construed as undermining the ability of district court judges to manage their dockets effectively or to impose appropriate sanctions for discovery abuse
 
 
 [6]
 Moreover, the convention speech denigrating defense attorneys was delivered during the period between the hearing on the Motion to Alter or Amend and the court's issuance of its final ruling