UNITED STATES of America, Appellee,

v.

Nasser MORADI, Appellant.

No. 81–1949.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 1, 1982.

Decided March 8, 1982.

---

Frank J. Marcone, Media, Pa., for appellant.

Allan L. Martin, Asst. Regional Counsel, U. S. Customs Service, Potomac, Md. (J. Frederick Motz, U. S. Atty., Paul R. Kramer, Deputy U. S. Atty., Baltimore, Md., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and WIDENER and HALL, Circuit Judges.

ALBERT V. BRYAN, Senior Circuit Judge:

In a libel for the forfeiture of two Persian rugs allegedly imported in violation of the Customs laws, the District Court, on February 19, 1981, entered a default judgment against appellant Nasser Moradi. Moradi's failure to file an answer in conformity with the District of Maryland's Local Rules of Practice and his additional failure to appear, either *in propria persona* or by counsel, at a pre-trial conference prompted this action. From the Court's subsequent refusal to grant relief under Fed.R.Civ.P. 55(c) or 60(b), Moradi appeals, asserting that the Court below erred in declining to set aside the default. We agree and therefore reverse.

## I

In the autumn of 1973, appellant, a naturalized American citizen, entered the United States after a trip to his native country of Iran. In his possession were two Persian rugs, both of which were declared and admitted duty-free, apparently on the basis that they qualified as "household effects" under 19 C.F.R. § 148.52 (1981).[1] Appellant again entered the United States with Iranian carpets on August 31, 1976. On this occasion, however, the United States Customs Service denied duty-free entry and seized the rugs. An investigation ensued and, on July 24, 1978, Moradi admitted to a Customs Agent that, in addition to the 1976 carpets, he also had imported rugs in 1973 duty-free. The Agent then seized these carpets.

Appellant continued to insist that both sets of carpets were entitled to duty-free treatment. The Customs Service, however, maintained that they were dutiable because not actually used by appellant for one year prior to importation.[2] In order to preserve

---

1. Under this provision, household effects "actually used abroad for not less than 1 year by resident [*sic*] or non-residents, and not intended for any other person or for sale may be allowed entry free of duty and tax ...." 19 C.F.R. § 148.52(a). The District Director of Customs at Dulles Airport, the point of entry, apparently accepted appellant's declaration in 1973 that these rugs qualified for duty-free entry under this provision. In light of subsequent events, however, the Customs Service now contests appellant's claim for duty-free privileges.

2. The Record reveals that appellant left Iran in 1959 to study in the United States, intending to return at the completion of his studies. Acting

his claims to both sets of rugs,[3] appellant retained Frank J. Marcone, a member of the Pennsylvania bar, who negotiated unsuccessfully with the Customs Service. Finally, on November 19, 1980, the United States filed suit in the Federal District Court in Maryland. After service of the Complaint on December 8, appellant's counsel prepared an answer and timely served copies on the Clerk of Court and counsel for the Government.

The Clerk refused to accept the proffered answer, however, citing noncompliance with several local rules. In particular, it appears that Marcone was not admitted to practice in the District of Maryland. When the answer was returned, counsel was absent from his office and his staff failed to apprise him of the Clerk's letter. On January 9, 1981, counsel for the United States, acting on instructions of the presiding District Judge, notified appellant's counsel that a pre-trial conference had been scheduled for February 17, 1981, and that an answer still had not been filed. Again, this correspondence was not brought to the attention of appellant's counsel, apparently because of Marcone's unexpected hospitalization on January 10.

When neither appellant nor his counsel appeared for the pre-trial conference, the Government moved for and was awarded a default judgment. On March 20, 1981, Marcone learned of this judgment and immediately filed a motion for relief under Fed.R.Civ.P. 60(b). Upon the District Court's denial of this motion, August 12, 1981, Moradi brought this appeal.

## II

Rule 55 of the Federal Rules of Civil Procedure authorizes the entry of a default judgment when a defendant fails "to plead or otherwise defend" in accordance with the Rules. Although the clear policy of the Rules is to encourage dispositions of claims on their merits, *see Reizakis v. Loy*, 490 F.2d 1132, 1135 (4th Cir. 1974), trial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom. *See* Fed.R.Civ.P. 55(c), 60(b).

Traditionally, we have held that relief from a judgment of default should be granted where the defaulting party acts with reasonable diligence in seeking to set aside the default and tenders a meritorious defense. *Central Operating Co. v. Utility Workers of America*, 491 F.2d 245, 254 (4th Cir. 1974); *Consolidated Masonry & Fireproofing, Inc. v. Wagman Construction Corp.*, 383 F.2d 249, 251 (4th Cir. 1967). Whether a party has taken "reasonably prompt" action, of course, must be gauged in light of the facts and circumstances of each occasion and the exercise of discretion by the trial judge will not be disturbed lightly. Further, all that is necessary to establish the existence of a "meritorious defense" is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party. *See Central Operating Co. v. Utility Workers of America*, 491 F.2d 245, 252 n.8 (4th Cir. 1974).

These requisites effectuate important policies inhering in our system of justice. Balanced against the manifest preference

on this assumption, and in accordance with Iranian custom, Moradi's family placed certain funds in trust for the purchase of household items to be used by him upon his return to Iran. The carpets were purchased and it subsequently became clear that appellant would not return, but instead would remain permanently in the United States. Accordingly, appellant's grandparents, who stored the carpets for him, arranged to have two of them delivered to him while he was visiting Iran in 1973.

These facts, if true, would tend to support the Government's contention that the rugs were not entitled to duty-free entry. In the present

posture of the case, however, we are not willing to assume that appellant will be unable to show that he properly declared the carpets as exempt household goods, that the delay between seizure and the institution of this action bars the Government's claim, or that he has any other valid defense.

3. The United States filed forfeiture proceedings against the rugs imported in 1976 on August 26, 1981 in the Federal District Court for the Eastern District of Pennsylvania. The Government's claim against those carpets thus is not before this Court.

for trials on the merits are our interests in finality and repose, and our concern lest an already-burdened judicial system be compromised by frivolous and unnecessary proceedings.

Additionally, justice also demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings. In *Chandler Leasing Corp. v. Lopez*, 669 F.2d 919 (4th Cir. 1982), we recently referred to this policy in reversing an involuntary dismissal with prejudice for failure to obtain local counsel. Finding that the plaintiff bore no personal responsibility for the failure to obtain local counsel, no prejudice to the defendant, the lack of a history of dilatory action by the plaintiff, and the availability of sanctions less drastic than dismissal with prejudice, we reversed the trial court. Although *Chandler Leasing* dealt with involuntary dismissal, its concern for distinguishing between the fault of counsel and the fault of a party personally requires similar treatment of default judgments.

### III

It is beyond cavil that there was no delay here once the default was discovered. Instead, counsel immediately filed for relief. Furthermore, while the instant facts may tend to uphold the Government's libel of the carpets, we cannot say that appellant will be unable to vindicate his claim, either by showing conclusively that these carpets were household goods or by establishing another defense. Finally, doubt as to this matter, or as to the propriety of giving relief generally, must be resolved in appellant's favor since the record clearly discloses he bears no personal responsibility for the failure to answer punctually or to appear at the pre-trial conference. The defaults, if any, rest upon his counsel. In the circumstances, we believe that since the District Court is permitted to impose less severe sanctions, it was not justified in refusing all relief.

The judgment is reversed and the cause remanded for proceedings not inconsistent with this opinion.

So Ordered.