**AUGUSTA FIBERGLASS COATINGS, INC., Plaintiff–Appellee,**

v.

**FODOR CONTRACTING CORPORATION, Defendant–Appellant.**

No. 87–2551.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 6, 1988.

Decided April 7, 1988.

---

Aiken, S.C., on brief), for defendant-appellant.

John Williams Harte, Jr., Aiken, S.C., for plaintiff-appellee.

Before HALL and WILKINSON, Circuit Judges, and BULLOCK, United States District Judge for the Middle District of North Carolina, sitting by designation.

PER CURIAM:

The major issue presented by this appeal is whether the district court abused its discretion under Fed.R.Civ.P. 60(b) by denying a motion to vacate a default judgment. We conclude that the district court failed to apply the correct legal standard and that the default judgment should have been set aside.

I.

Fodor Contracting Corporation ("Fodor"), a New Jersey corporation, was the general contractor for the installation of odor-control equipment at the Cape May County Municipal Utilities Authority composting facility in New Jersey. Augusta Fiberglass Coatings, Inc. ("Augusta") is a South Carolina corporation which bid on the subcontract for plastic tanks and duct work. Fodor accepted Augusta's bid on March 13, 1986.

In late August a dispute arose over the nonpayment of Augusta's invoices, which totaled approximately $300,000.00. Augusta sought a subcontractor's lien in New Jersey, forcing Fodor to post a bond with the municipal utilities authority before Fodor could receive further payments. On September 18, 1986, Augusta filed a breach of contract suit in United States District Court for the District of South Carolina.

Fodor referred the matter to attorney Daniel F. Steinmetz, Jr., who had already corresponded with Augusta's attorney, John W. Harte, concerning Augusta's lien claim. Attorneys Steinmetz and Harte quickly negotiated a partial settlement under which Fodor was to pay $194,000.00, Augusta was to reduce its New Jersey lien

Daniel F. Steinmetz, Jr., Pennsauken, N.J. (John William Weeks, Johnson, Johnson, Maxwell, Whittle, Shelgrove & Weeks,

accordingly and to take a voluntary dismissal in its suit, and the parties would further negotiate the remaining claim of $110,000.00. This settlement was memorialized in a letter from Harte to Steinmetz dated September 26, 1986 (one day after Fodor received the complaint and summons).

Fodor made the agreed-upon payment and the companies continued to negotiate their differences. The further negotiations broke down, however, and Augusta concluded that legal action was still required. Rather than taking a voluntary dismissal, Augusta merely amended its claim to reflect the $194,000.00 payment by Fodor. Harte mailed the amended complaint to Steinmetz on October 15, 1986, and Steinmetz received it on October 20. In his cover letter enclosing the amended complaint, Harte explained Augusta's position and stated:

> In light of the Fodor position it is evident that we still have a problem which requires court action. I have, therefore, amended the complaint to reflect the payment by Fodor. I see no reason to end the action since I would simply file a new action immediately. I enclose and serve upon you the amended complaint.

Harte wrote another letter to Steinmetz on October 24, 1986, which discussed the invoices Harte was compiling for Steinmetz's review, described the damage Fodor's nonpayment was causing, and threatened to "add these damages to the pending suit." Despite these statements in Harte's letters and the service of the amended complaint, Steinmetz believed that the negotiations had been revived and erroneously assumed that Harte would notify him before applying for a default judgment. Consequently, Fodor did not file an answer to Augusta's complaint or amended complaint.

On November 11, 1986, forty-seven (47) days after service of the original complaint and twenty-six (26) days after mailing of the amended complaint, Harte filed an affidavit of default. On November 13, the clerk entered a default judgment against Fodor in the sum of $114,141.42. Steinmetz received a copy of this judgment on November 21, 1986, and Fodor moved to vacate the judgment on November 28. In its motion Fodor also challenged Augusta's service of process and the court's personal jurisdiction. In support of the motion, Steinmetz submitted an affidavit outlining the sequence of events and explaining his error. He also submitted affidavits from officers of Fodor which gave Fodor's position in the dispute and detailed several counterclaims against Augusta.

After hearing argument in chambers, the district court entered an order dated February 19, 1987, which denied the motion to vacate. After discussing the adequacy of service of process and determining that it had personal jurisdiction, the district court denied relief because it found no excusable neglect as required by Rule 60(b). The district court held that Fodor "was the author of its own demise" through "its inactivity and failure to respond." While we agree that jurisdiction was proper, we reverse the denial of Rule 60(b) relief because the district court failed to distinguish between the failure or neglect of Fodor's attorney and the neglect of Fodor itself.

## II.

Rule 60(b) is the means by which a court may relieve a party from a final judgment based on one of six grounds, the primary ground being "mistake, inadvertence, surprise, or excusable neglect." Where defaults and judgments thereon are at issue, Rule 60(b) must be read with due regard for Rule 55(c), which provides that "for good cause shown, the court may set aside an entry of default, and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Rule 60(b) motions are addressed to the sound discretion of the district court and " 'will not be disturbed on appeal absent a showing of abuse of that discretion.' " *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir.1987) (quoting *Werner v. Carbo*, 731 F.2d 204, 206 [4th Cir.1984]). However, where default judgments are at issue, over the years this court has taken an increasingly liberal view of Rule 60(b) which indicates that a reversal is warranted under the present circumstances.

This liberal view of discretionary relief from default judgments is best illustrated by *United States v. Moradi*, 673 F.2d 725 (4th Cir.1982). *Moradi* involved a defendant whose answer was rejected for noncompliance with local rules. No new answer was filed and a default judgment was granted after the defendant's attorney failed to appear at a pre-trial conference. Relying on the defendant's prompt motion for relief and his allegations of a meritorious defense, this court set aside the default judgment under Rule 60(b). Drawing a clear line between the fault of counsel and the fault of a party personally, we stated that "justice ... demands that a blameless party not be disadvantaged by the errors or neglect of his attorney." 673 F.2d at 728. Noting that less severe sanctions were available, the *Moradi* court held that any doubt as to the propriety of giving relief must be resolved in the movant's favor when the movant bears no personal responsibility for the error which led to the default. *Id. Accord Lolatchy v. Arthur Murray, Inc.*, 816 F.2d 951 (4th Cir.1987) (default judgment imposed as a sanction for discovery abuses and disregard of court orders reversed because defendants were blameless and lesser sanctions were available); *Educational Services, Inc. v. Maryland State Board for Higher Education*, 710 F.2d 170, 177 (4th Cir.1983) (if default judgment had been granted for defendant's failure to answer, under *Moradi* the district court "would have been virtually compelled" to set it aside upon a Rule 60[b] motion).

*Moradi* should be contrasted with *Park Corp. v. Lexington Ins. Co.*, the one recent case involving a default judgment in which we have affirmed the denial of Rule 60(b) relief. In *Park* an insurer received process in its mailroom and inexplicably lost the papers. No attorney was contacted and no answer was filed, which eventually resulted in a default judgment. Without mentioning *Moradi*, *Park* employed a stricter analysis similar to the district court's in this case. Although the insurer clearly had a meritorious defense, we held that it had failed to show excusable neglect, or any excuse at all, for its failure to answer; therefore it was not entitled to relief. *Park*, 812 F.2d at 897.

■ Although *Park* does not cite or discuss *Moradi*, the results of these two cases are entirely consistent when one considers that in *Park* the party alone was responsible for its default, whereas in *Moradi* the attorney alone was responsible for the default. While *Moradi* does not mention "excusable neglect" or any of the other grounds for relief under Rule 60(b), its import is that, when the party is blameless, his attorney's negligence qualifies as a "mistake" or as "excusable neglect" under Rule 60(b)(1). Moreover, both cases require a movant to act in a timely fashion, to avoid unfair prejudice to the non-movant, and to proffer a meritorious defense in order to obtain relief. *Park*, 812 F.2d at 897; *Moradi*, 673 F.2d at 728.

■ This focus on the source of the default represents an equitable balance between our preference for trials on the merits and the judicial system's need for finality and efficiency in litigation. When the party is blameless and the attorney is at fault, the former interests control and a default judgment should ordinarily be set aside. When the party is at fault, the latter interests dominate and the party must adequately defend its conduct in order to show excusable neglect. In all cases, a Rule 60(b) movant must act in a timely fashion, must demonstrate a lack of prejudice to the non-movant, and must proffer a meritorious defense. *Park*, 812 F.2d at 897; *Moradi*, 673 F.2d at 728. Finally, as noted under *Moradi*, when a default judgment is vacated the trial court may nonetheless impose other sanctions against the offending attorney, such as awarding the non-movant's costs and attorney's fees incident to the Rule 60(b) motion.

■ Applying these principles to the present case, the district court erred because it failed to distinguish between the fault of Fodor's attorney and the fault, if any, of Fodor itself. Without discussing Fodor's diligence in moving for relief or the merit of Fodor's proffered defenses, the district court lumped Fodor and its attor-

ney together in finding that "the defendant is the author of its own demise." Moreover, upon a thorough review of the record, we are convinced that Fodor is largely blameless for the default below, which was due primarily to its attorney's carelessness in his handling of the amended complaint. Augusta corresponded exclusively with the attorney once he entered the negotiations; the amended complaint, its cover letter, and the letter of October 24 were all mailed directly to the attorney. The attorney's affidavit establishes that he believed no answer was required; thus it would be unrealistic and unfair to expect his client to think otherwise. It was the attorney who assumed that his counterpart would give a commendable but unrequired notice before seeking the default judgment. Under these circumstances, "justice also demands that a party not be disadvantaged by the errors or neglect of his attorney." *Moradi*, 673 F.2d at 728.

■ Under *Moradi* and *Park*, however, in order to merit relief Fodor still must demonstrate that it acted promptly, that Augusta will not suffer unfair prejudice if the default judgment is set aside, and that Fodor has a meritorious defense. *Park*, 812 F.2d at 897; *Moradi*, 673 F.2d at 728. There is little doubt that Fodor has satisfied the first two requirements. Showing awakened speed, Fodor moved for relief within two weeks of the entry of the judgment, well within the rule's one-year limit. As to prejudice, we perceive no disadvantage to Augusta beyond that suffered by any party which loses a quick victory. Further, Fodor has secured Augusta by posting a bond in the full amount of Augusta's claim. Augusta points to the difference between the legal interest rate and the rate it is charged by its financiers, but this unfortunate differential is borne by all such plaintiffs.

■ The presence of a meritorious defense is a tougher issue, but one that also must be resolved in Fodor's favor. A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim. *Central Operating Co. v. Utility Workers of America*, 491 F.2d 245, 252 n. 8 (4th Cir.1974); *Williams v. Blitz*, 226 F.2d 463 (4th Cir.1955). "The underlying concern is ... whether there is some possibility that the outcome ... after a full trial will be contrary to the result achieved by the default." 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2697, p. 531 (2d ed. 1983). The affidavits of Fodor's officers establish just such a possibility. In sum, these affidavits support the following defenses and counterclaims: (1) Fodor charges that approximately $40,000.00 of Augusta's claim is due to additional work and material needed because of Augusta's own errors; (2) Fodor alleges that it is due a back charge of $14,646.07 for its efforts to correct Augusta's mistakes; (3) due to time delays, Fodor may be liable on a $500.00 per day liquidated damages clause, a liability it would in turn attempt to charge to Augusta; and (4) Fodor believes that Augusta wrongly filed its New Jersey lien claim and thus is responsible for the $5,000.00 Fodor expended in posting the bond to cover that claim. Although these statements address the amount, rather than the propriety, of Augusta's claim, we believe that taken together they are a sufficient proffer of a meritorious defense. This conclusion is reinforced by *Moradi*'s admonition that any doubts should be resolved in the movant's favor.

In sum, since Fodor acted promptly, demonstrated a lack of prejudice to Augusta, and proffered a meritorious defense, Fodor met its burden to justify relief under Rule 60(b). Although the district court is in the best position to weigh the competing interests implicated by default judgments within the context of each case, the district court's failure to distinguish between a blameless party and its neglectful attorney constitutes legal error amounting to an abuse of discretion. Upon remand, the district court should allow Fodor to file its answer promptly and may consider the pro-

priety of other sanctions against its attorney.

REVERSED AND REMANDED.