849 F.2d 605
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
GNB, INCORPORATED, Plaintiff-Appellee,
v.
TROPEX, INC; Best Battery Company, Inc.; Arthur R. Best;
Roland C. Best, Defendants-Appellants,
and
Best-West, Inc.; Rolart, Inc., Defendants.
 No. 87-1637.
 United States Court of Appeals, Fourth Circuit.
 Argued: March 11, 1988.
Decided: June 3, 1988.
 
 Lee H. Ogburn (Michael L. Heikes; Kramon & Graham, P.A., on brief), for appellants.
 Michael J. O'Rourke (Thomas M. Lynch; Winston & Strawn; William C. Sammons; William W. Carrier, III; Tydings & Rosenberg; Augustus J. Hipp, on brief), for appellee.
 Before HARRISON L. WINTER, Chief Judge, and MURNAGHAN and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Appellee GNB, Inc., a manufacturer of lead-acid batteries, entered into a "ledger balance financing" agreement with its distributor, appellants Best-West, Inc. and affiliates Tropex Batteries, Inc. and Best Battery Company, and Roland and Arthur Best principals and officers of Best-West, Tropex, and Best Battery. Under this agreement, GNB manufactured and shipped batteries to Best-West, et al., for distribution. A fixed percentage of the materials shipped by GNB was considered to be part of a long term loan; the remainder was considered sold on regular credit terms. This agreement was apparently secured by Best-West's inventory and accounts receivable and, above a threshold amount, by the personal guarantees of Arthur and Roland Best.
 
 
 2
 In June 1986, GNB filed suit against Best-West in the United States District Court for the District of Maryland alleging default in payments due under the agreement. GNB filed a third amended complaint on January 22, 1987, and a motion for partial summary judgment against Tropex, Best Battery, Arthur Best, and Roland Best in the amounts of $305,026.74; $532,379.95; $1,163,174.00; and $1,163,174.00, respectively, on February 25, 1987. When no timely opposition to the motion was filed by defendants, the district court granted the motion on March 20, 1987, and awarded GNB the full relief requested.
 
 
 3
 On March 27, 1987, defendants moved the district court, pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, to alter or amend the judgment. The court denied defendants' motion on April 3, 1987, holding that Rule 59 applies only to motions for a new trial. The court stated that Rule 6(b)(2) controls the procedure for submitting motions out of time. Defendants, on April 21, 1986, then moved, pursuant to Rule 6(b)(2), for an order allowing them to file an opposition to plaintiff's motion for partial summary judgment out of time. The district court denied defendants' motion on June 1, 1987, and entered final judgments on the counts in issue. Defendants appeal.
 
 
 4
 We hold that the circumstances of this case do not warrant the entry of judgment against defendants without permitting them the opportunity to present the merits of their case. We thus reverse the entry of summary judgment and remand for further proceedings on the merits of plaintiff's partial summary judgment motion.
 
 
 5
 This circuit has held that relief from judgment by default should be granted where a defaulting party is not personally responsible for delay occasioned by its attorney, acts with reasonable diligence to set aside the default, and tenders a meritorious defense. Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953 (4th Cir.1987); United States v. Moradi, 673 F.2d 725, 728 (4th Cir.1982). We do not agree with plaintiff that because these precedents dealt with motions to set aside judgments in default, they are inapplicable to the case at bar. See Fed.R.Civ.P. 55(c); 60(b).
 
 
 6
 In the instant case, defendants failed to timely oppose plaintiff's motion for partial summary judgment. The effect of the district court's rulings, denying defendants' motion to file their opposition out of time and granting plaintiff's motion for summary judgment, is to deny defendants any opportunity to respond to the merits of the considerable claims against them. This results in a termination of proceedings tantamount to a judgment by default against defendants. Here, no less than in the case of a default from which relief is sought under Rule 55(c) or 60(b), "justice demands that a blameless party not be disadvantaged by the errors or neglect of his attorney which cause a final, involuntary termination of proceedings." Lolatchy, 816 F.2d at 953, quoting Moradi, 673 F.2d at 728.
 
 
 7
 In determining whether to set aside the judgment, the district court must consider the personal responsibility of the party, the possibility of prejudice, whether there was a history of dilatory action, any delay in seeking relief, and the availability of less drastic sanctions. Lolatchy, 816 F.2d at 953; Moradi, 673 F.2d at 728.
 
 
 8
 A review of these factors indicate that relief should have been granted in this case. The district court made no finding that defendants, and not their counsel, were responsible for the failure to file the opposition to the summary judgment motion. In fact, the court found defense counsel to have been neglectful, though it found that neglect not to have been excusable. Any delay and dilatoriness in this case did not rise to the level of that in Lolatchy, in which this court felt compelled to set aside the judgment. The record reveals that defendants promptly sought relief by moving under Rule 59(e) to amend the judgment within seven days after the summary judgment motion was granted, and, when that motion was denied on procedural grounds, they moved for leave to oppose the summary judgment motion out of time eighteen days later. The prejudice suffered by plaintiff as a result of defendants' precarious financial condition and the possibility of losing priority to remaining assets with respect to other creditors was not significantly increased by this brief delay. In contrast, the defendants, as a result of the judgment against them, face financial liability in excess of three million dollars, including over one million dollars against two individual defendants in their personal capacity. The effect of such a judgment may be devastating. Furthermore, the court made no finding as to whether defendants had engaged in a pattern of delay, nor did it address the possibility of alternative sanctions, the most obvious of which would have been the imposition of the costs of the delay, including attorney fees, on the defendants' attorney.
 
 
 9
 Since "we cannot say that appellant[s] will be unable to vindicate [their] claim[s]" at least in part, the circumstances of this case demand that any doubt concerning the propriety of relief be decided in favor of appellants. Moradi, 673 F.2d at 728. We hold that the district court abused its discretion in denying defendants' motion under Rule 6(b) to file opposition to plaintiff's summary judgment motion out of time. We therefore direct the district court to grant the Rule 6(b) motion and to entertain the summary judgment motion on its merits. We intimate no view as to the resolution of the merits of the motion for summary judgment.
 
 
 10
 REVERSED AND REMANDED.
 
 MURNAGHAN, Circuit Judge, concurring:
 
 11
 I agree with much of the reasoning of the majority opinion and concur in its decision to reverse the grant of summary judgment and remand the case. I, like the majority, find error in the district judge's handling of the Rule 6(b) motion, and I agree that we must vacate the summary judgment that was based on the unopposed motion for summary judgment. I write separately for two reasons. My first quarrel with the majority opinion is that it unnecessarily goes on to tell the district judge what he should have done, had he considered the factors identified as salient in ruling on a Rule 6(b) motion. The majority opinion identifies several factors that the district judge failed to consider and then indicates that the Rule 6(b) motion should have been granted. I would not go to or even address that further step.
 
 
 12
 The majority remands the case with direction to grant the Rule 6(b) motion to consider the response to the motion for summary judgment. I would remand only with direction to reconsider the Rule 6(b) motion in light of those factors identified in the majority opinion. The district judge may decide, in light of those factors, not to grant the Rule 6(b) motion, at which time, he could regrant summary judgment. Or, he may grant the Rule 6(b) motion, receive and consider the response to the summary judgment motion. It seems particularly inappropriate for an appellate court to consider, in the first instance, as the majority necessarily does, those factors salient to a Rule 6(b) motion. The majority must have reached a decision regarding the personal responsibility of the defendants, the possibility of prejudice, the history vel non of dilatory action, the delay vel non in seeking relief, the availability of less drastic sanctions, since the majority grants the Rule 6(b) motion. I think that the district court should, in the first instance, make those determinations.
 
 
 13
 Second, I write also to discuss a conflict of Fourth Circuit precedent that the majority did not address. The present case requires the court to choose between two seemingly contradictory precedents in the Fourth Circuit. On the one hand are United States v. Moradi, 673 F.2d 725 (4th Cir.1982) and Lolatchy v. Arthur Murray, Inc., 816 F.2d 951 (4th Cir.1987). Both espouse solace from procedural defaults. Lolatchy considered the Rule 55(c) standard for setting aside an entry of default. Moradi considered the Rule 60(b) standard for setting aside a default judgment. At the other extreme is Park Corp. v. Lexington Ins. Co., 812 F.2d 894 (4th Cir.1987), that considered the Rule 60(b) standard for setting aside a default judgment on the ground of excusable neglect. Park Corp. does not encourage relief from procedural defaults. The Park Corp. court had no doubt that Lexington had a meritorious defense to Park Corp.'s claim. Nonetheless, it decided that the district court did not abuse its discretion in failing to grant relief from the default judgment because excusable neglect had not been shown. The unexplained disappearance of suit papers from the insurance company's mail room did not, according to the court, constitute excusable neglect. "Indeed, to hold otherwise", the court wrote, "would be to allow defaulting defendants to escape the consequences of their inaction simply by asserting that the legal process to which they failed to respond was lost." Id. at 897.
 
 
 14
 In the present case the district court found that failure properly to interpret federal rules of procedure was not excusable neglect under Fed.R.Civ.P. 6(b) sufficient to justify defendants' filing a paper out of time. Park Corp. appears to support the district court's result. Park Corp. is perhaps the closest authority since it construed "excusable neglect" and that is the operative phrase in both Rule 60(b) and Rule 6.
 
 
 15
 Because of that similarity with the present case, Park Corp. needs to be considered. I distinguish Park Corp. from the present case on the following basis. In Park Corp., the insurance company, whose mailroom lost the suit papers, gave no reason for the disappearance. Since there was no excuse the district court could not determine whether it was an acceptable one. Park Corp., 812 F.2d at 897. In the present case, there was an excuse offered, confusion with federal rules of procedure. Thus, it is appropriate to consider those factors identified in the majority opinion and decide if the excuse is acceptable. The district court has not yet done so. It should have the opportunity to do so on remand.