61 F.3d 902
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Yves WONG; Phyllis Wong; Avista International,
Incorporated, Plaintiffs-Appellants,
v.
Xavier A. ARAGONA; John T. Szymkowicz; Aragona &
Szymkowicz; Melrose Commercial Enterprises,
Incorporated, Defendants-Appellees,
and
Victor CURCIO, Defendant.
Yves WONG; Phyllis Wong; Avista International,
Incorporated, Plaintiffs-Appellees,
v.
Victor CURCIO, Defendant-Appellant,
and
Xavier A. ARAGONA; John T. Szymkowicz; Aragona &
Szymkowicz; Melrose Commercial Enterprises,
Incorporated, Defendants.
 Nos. 93-1667, 93-1998.
 United States Court of Appeals, Fourth Circuit.
 Submitted: July 12, 1995.
Decided: July 25, 1995.
 
 Thomas Alan Appel, Sykesville, MD, for Appellant. Brian C. Parker, Mark M. Dumler, Gebhardt & Smith, Baltimore, MD, for Appellees.
 Before ERVIN, Chief Judge, MURNAGHAN, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 This dispute arises out of a failed oil investment venture. In 1987, Yves and Phyllis Wong, citizens of Mauritius, formed Avista International, Inc., in order to obtain business visas for their children.* The Wong's children and Phyllis Wong were named as the directors and officers of Avista.
 
 
 2
 In 1989, the Wongs were introduced to Aragona and Szymkowicz by their son-in-law, who was, at the time, a summer law clerk with their law firm, Aragona & Szymkowicz. In July 1989, Yves Wong met with Aragona and Szymkowicz to discuss Avista's possible investment in Melrose, Inc. Melrose was a small closely-held corporation formed by Aragona, Szymkowicz, Victor Curcio, and Robert Deason to import oil from Nigeria. As a result of this meeting, Wong, through Avista, agreed to loan Melrose $180,000 for sixty days at eleven percent interest plus $.05 per barrel of oil on the first three contracts consummated by Melrose. When Melrose failed to pay the loan at its maturity, the Wongs instituted this action alleging (1) breach of contract; (2) breach of fiduciary duty; (3) misrepresentation/ fraud; (4) federal securities fraud; (5) professional negligence (legal malpractice); and (6) that the individual shareholders were liable based on "piercing the corporate veil."
 
 
 3
 The district court granted the Wongs' motion for default judgment against Curcio in the amount of $330,000 plus interest ($180,000 on the note plus $.05 per barrel of oil multiplied by three million barrels, or $150,000). In No. 93-1998, Curcio appeals from the district court's order refusing to set aside the default judgment against him.
 
 
 4
 The district court entered judgments in favor of the remaining Defendants on all claims. In No. 93-1667, the Wongs appeal from the orders (1) granting summary judgment on the breach of fiduciary duty and legal malpractice claims; (2) granting judgment as a matter of law on the securities fraud claim; and (3) denying their objections to the testimony of certain witnesses during the jury trial on the fraud claim.
 
 
 5
 No. 93-1667. We review de novo the district court's orders granting summary judgment to the Defendants on Counts II and VI (breach of fiduciary duty and legal malpractice). Higgins v. E.I. DuPont De
 
 
 6
 Nemours & Co., 863 F.2d 1162 (4th Cir.1988). Summary judgment is only appropriate where the moving party can show that there is no genuine issue of material fact and where the record taken as a whole would not allow a rational trier of fact to find for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Fed.R.Civ.P. 56(c). With this standard in mind, we agree with the district court's finding that the Wongs failed to establish a relationship upon which to base either their legal malpractice claim or their breach of fiduciary duty claim under Maryland law. See Flaherty v. Weinberg, 492 A.2d 618 (Md.Ct.Spec.App.1985) (holding that attorney is not liable to a non-client for professional malpractice); McCoy v. Clark, 319 A.2d 314 (Md.Ct.Spec.App.1974) (listing factors taken into consideration in determining whether fiduciary relationship exists).
 
 
 7
 We also review de novo the district court's order granting judgment as a matter of law on Count IV (securities fraud) pursuant to Fed.R.Civ.P. 50(a). Malone v. Microdyne Corp., 26 F.3d 471, 475 (4th Cir.1994). We consider whether, without weighing the evidence or judging witness credibility, reasonable jurors could have reached only one conclusion. Gairola v. Virginia Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir.1985). We agree with the district court's conclusion that the loan agreement at issue was not a "security" within the meaning of the Securities and Exchange Act, 15 U.S.C.A. Sec. 78c(a)(10) (West 1981 & Supp.1995) and, therefore, affirm its decision on this claim as well.
 
 
 8
 Finally, we find that the district court did not abuse its discretion by allowing the testimonial evidence at issue. See Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1055 (4th Cir.1986) (district court's evidentiary rulings are reviewed for abuse of discretion). The testimony of defense witness Colontonio and Szymkowicz was directly relevant to the issue of fraudulent intent and we will not disturb the district court's ruling on its admissibility.
 
 
 9
 No. 93-1998. This court reviews default judgments, and denials of relief from default judgments, under an abuse of discretion standard. Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp., 843 F.2d 808, 810 (4th Cir.1988); United States v. Moradi, 673 F.2d 725, 727 (4th Cir.1982). The factors to be considered in deciding whether to set aside a default judgment are: (1) the personal responsibility of the defaulting party; (2) the prejudice to the non-defaulting party by vacating the default judgment; (3) a history of dilatory action by the defaulting party; and (4) the availability of less drastic sanctions. Lolatchy v. Arthur Murray, Inc., 816 F.2d 951, 953 (4th Cir.1987) (citing Moradi, 673 F.2d at 728).
 
 
 10
 Applying these factors, we find that the district court acted within its discretion in entering a default judgment against Curcio. First, Curcio was personally responsible for his actions as he had been proceeding pro se for over one year prior to the date of trial. Second, the Wongs would be substantially prejudiced by setting aside the judgment because they would be forced to proceed with the time and expense of a second trial (the first of which lasted two weeks). Third, Curcio's failure to appear at trial was the culmination of a history of non-participation in the proceedings. He did not attend or participate in the pre-trial conference or in the drafting of the pre-trial order and complied with discovery requests only after being compelled to do so. Curcio maintains that he was physically unable to attend the trial. However, the letter from Curcio's doctor received by the district court during the trial stated only that he suffered from an eye condition which results in blurred vision requiring contact lenses to correct and that "it is quite common for a patient with this type of problem to experience photophobia (sensitivity to light)." The letter did not state that Curcio was unable to attend the trial and Curcio did not request a continuance. Finally, given the late stage in the proceedings, we find that the district court did not abuse its discretion by resorting to a less drastic sanction. Accordingly, we affirm.
 
 
 11
 We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.
 
 No. 93-1667, AFFIRMED
 No. 93-1998, AFFIRMED
 
 
 *
 Yves Wong is employed by the World Bank. He testified that, because he is not a United States Citizen, his children would have to leave this country upon their graduation from college (which was imminent) unless they obtained business visas. Wong consulted with an immigration attorney who advised him to form a corporation with a minimum of $100,000 investment and apply for business visas