**H & W FRESH SEAFOODS, INC.**

v.

**Lewis SCHULMAN, Scott Taylor, and Hews Seafood, Inc.**

No. CCB–98–3851.

United States District Court, D. Maryland.

Sept. 29, 2000.

J. Stephen Simms, Vincent J. Columbia, Jr., Greber & Simms, Baltimore, MD, for plaintiff.

## *MEMORANDUM*

BLAKE, District Judge.

Now pending before this court are two lawsuits involving these parties. In this one, (CCB–98–3851), Defendant Lewis Schulman has filed a motion to vacate the default judgment entered against him in favor of Plaintiff H & W Fresh Seafoods, Inc. ("H & W") and to have that case dismissed without prejudice. He has also moved to strike the plaintiff's response to that motion. In the other suit, (CCB–00–499), Defendants Southeast Foods, LLC ("Southeast") and Hews Seafood, Inc. ("Hews") have filed a motion to vacate the confessed judgment entered against them in favor of H & W. Because the motions arise from the same set of facts and involve the same parties, the Court has considered them concurrently. Each of the motions has been fully briefed and no hearing is deemed necessary. *See* Local Rule 105.6. For the reasons given below, the court will deny both Defendant Schulman's motion to strike the plaintiff's response and his motion to vacate the default judgment. The court will rule in the very near future on the motion by Defendants Hews and Southeast

to vacate the confessed judgment entered against them in CCB–00–499.

## BACKGROUND

These cases stem from a complicated set of facts and have been alternately litigated and resolved several times in the past two years. During the time relevant to this lawsuit, Defendants Schulman and Taylor were in the business of buying and selling seafood. Mr. Taylor was the president and chief operating officer of Hews, (Comp.¶ 7), which was owned in equal parts by Mr. Schulman's wife and Mr. Taylor's wife, and Mr. Schulman was, at one time, an employee of the company, (Mem. Supp. Mot. to Vac. Def. Jud. at 1–2). After that, however, the details become less certain.

Apparently, Defendants Schulman and Taylor, along with a third person, were also part owners of a second seafood company called SBT Corp. (*Id.*, Schulman Aff. ¶ 5.) On several occasions during late 1997, H & W shipped a large quantity of frozen shrimp to Mr. Schulman, who accepted it on behalf of SBT. (*Id.* ¶ 7, Comp. ¶ 13.)[1] Neither Mr. Schulman nor SBT paid for the shipments of shrimp, which were worth approximately $178,000. (Comp.¶ 17–19.)

At about this time, Mr. Schulman decided to leave the seafood business and, in January 1998, "ceased working for Hews." (Mem. Sup. Mot. to Vac. at 1.) Also, toward the end of February, Mr. Schulman and his wife executed a "Stock Purchase Agreement" in which his wife sold her stock in Hews to the Taylors. (Mem. Sup. Mot. to Vac. Def. Jud., Ex. 1.) As part of that sale agreement, Hews agreed to indemnify Mr. Schulman and his wife for any claims arising out of his employment with Hews. (*Id.* at 5.)[2] In addition, Mr. Schulman, along with the other principals allowed SBT's corporate charter to be forfeited. (Schulman Aff. ¶ 11.)

Unfortunately for Mr. Schulman, his attempts to extricate himself from the chaos surrounding the shrimp transfer were unsuccessful. Indeed, H & W filed suit against Schulman, Taylor, and Hews in November 1998 in connection with the three deliveries of shrimp. The suit alleged violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c)-(d), common law fraud, unjust enrichment, embezzlement, and breach of contract. (Comp.¶ 20–39.) Mr. Schulman did not respond to the summons or complaint, and a default was entered against him by the Clerk in January 1999 (Pl.'s Resp. to Mot. to Vac. Def. Jud. at 5.) A default order was not entered against Defendants Taylor and Hews who, unlike Mr. Schulman, were represented by counsel, and who managed to negotiate an extension of time to answer the complaint. (Mem. Sup. Mot. to Vac. Def. Jud. at 2.)

On April 28, 1999, a settlement was reached between Hews, Mr. Taylor, and H & W. The agreement required Hews to sign a Confessed Judgment Promissory Note which obligated it to make weekly payments for a period of several years totaling $167,500.

---

1. The specifics of these transactions are unclear. Mr. Schulman claims that he only ordered $30,000 worth of shrimp and that H & W sent him the additional "product" without his approval in the hopes that he would help them find a buyer for it. (Mem. Supp. Mot. to Vac. at 10.) Further, he asserts that, except the small amount he actually ordered, the shrimp was stored in a warehouse in SBT's name until it was transferred to H & W's account at the same warehouse in December 1997. (Schulman Aff. ¶ 10.) H & W, on the other hand, simply asserts that it made three large shipments to Schulman and SBT and that the shrimp were to be sold at a predetermined price with profit split between Mr. Schulman and H & W. (Comp.¶ 13.) Fortunately, as explained below, the court does not need to unravel the discrepancies between the two versions in order to resolve the motions currently before it.

2. The indemnity agreement may raise conflict of interest questions regarding counsel. If Hews and Mr. Taylor agree that the indemnity agreement is valid and that claims against Mr. Schulman are simply funneled to them, then the parties' interests are aligned and there would be no conflict. Counsel, however, has suggested on at least two separate occasions that the agreement may not be enforceable. (*See* Pl.'s Resp. to Mot. to Vac. Def. Jud., Ex. H at 2 ("While the enforceability of that [indemnity] agreement may be in question. . . ."); Mem. Supp. Mot. to Strike, Ex. 5 at 1 ("there are some questions regarding the enforceability of the [indemnity] agreement. . . .").) If the validity of the indemnity agreement is in question, Mr. Schulman's interests may be in conflict with Hews's and Mr. Taylor's. There is no indication in the record that either side has explicitly agreed to waive that conflict.

(*Id.,* Ex. 2.) At the same time, H & W entered a separate Limitations Tolling Agreement with Mr. Schulman in which Schulman agreed that, so long as Hews was current on its payments under the settlement, the applicable statute of limitations would be tolled for the claims against him by H & W.[3] (*Id.,* Ex. 3.) In return, H & W agreed "[t]hat immediately upon execution of this [agreement], counsel for H & W shall sign and execute the Notice of Voluntary Dismissal Without Prejudice attached hereto." (*Id.*) In that way, the claims against Mr. Schulman would have been resolved, and H & W would have preserved its right to bring a new suit against him if Hews defaulted on the settlement.

H & W, however, did not execute the voluntary dismissal. Subsequently, there were some delays or interruptions in Hews's payments.[4] H & W then requested that the court issue a Local Rule 111.1 Settlement Order, and the court did so on June 3, 1999 (Pl.'s Resp. to Mot. to Vac. Def. Jud., Ex. E.) There was no objection to the Rule 111.1 Order. In July, Hews entered an "Asset Purchase Agreement" with Southeast Foods. (Mem. Sup. Mot. to Strike at 14.) As part of that arrangement, Hews and Southeast entered an "Assumption and Assignment Agreement" whereby Southeast assumed liability for Hews's debts. (*Id.*)

Pursuant to the Rule 111.1 Settlement Order, H & W moved to reopen the case because not all of the payments had been made; the court granted that motion on August 20, 1999. By reopening the case, H & W vitiated the settlement with Hews and Mr. Taylor and revived the default order against Mr. Schulman. Hews continued to make payments to H & W in accordance with the settlement for some time, then lapsed again.[5]

During this time, H & W moved the court to enter a default judgment against Mr. Schulman. That motion was granted without opposition, and the court entered the default judgment on September 21, 1999 in the amount of $151,000. (Pl.'s Resp. to Mot. to Vac. Def. Jud., Ex. G.)

By November, Hews had caught up on its payments and, on November 11, 1999, H & W dismissed the suit it had reopened against Hews and Mr. Taylor. (*Id.* at 9.) The default judgment against Mr. Schulman, however, remained in effect. In December 1999, Hews again stopped making payments on the note, and H & W filed suit, (Civil No. CCB–00–499), on the confessed judgment note in February 2000. (*Id.* at 10.) One week later, Mr. Schulman filed a motion asking the court to vacate the default judgment it had entered against him in the earlier suit, (Civil No. CCB–98–3851). That motion is the first of the three that are currently before this court. Next, because it was seven days late, Mr. Schulman moved the court to strike the plaintiff's response to his motion. The motion to strike is also pending before the court.

In March 2000, the court entered an order for confessed judgment against Hews and Southeast for $148,622.08. (Civ. No. CCB–00–499, Order issued March 13, 2000.) In April, Hews and Southeast filed a motion asking the court to vacate the confessed judgment. That motion is the third, and final, one currently pending.

In summary, two separate lawsuits were filed by H & W in an attempt to recover the money it is allegedly owed by Hews, Southeast, and Schulman. The first lawsuit was eventually dismissed by H & W against Hews and Mr. Taylor and resulted in a de-

---

3. Mr. Shulman originally was part of the settlement agreement. Apparently, however, "since he had no further dealings with Hews and did not want his name to appear on the same document with Hews and Taylor," he insisted on being removed from it. (Mem. Supp. Mot. to Vac. Def. Jud. at 3.)

4. The two sides disagree vehemently about the extent and cause of the interruptions in payments. (*Cf.* Pl.'s Resp. to Mot. to Vac. Def. Jud. at 6–7; Mem. Sup. Mot. to Strike at 3, Ex. 1.)

Fortunately, the court is not required at this time to resolve this dispute.

5. Hews insists that the continued payments were an attempt to show good faith in the renewed settlement negotiations. Indeed, counsel for Hews sent a letter to counsel for H & W asserting that "by making any further regular payments to your clients, my clients do not waive any of their defenses regarding the unenforceability" of the settlement agreement. (Mem. Sup. Mot. to Strike, Ex. 3.)

fault judgment against Mr. Schulman. The second lawsuit was filed after Hews stopped making payments on the settlement reached in the first suit. It has resulted in a confessed judgment against Hews and Southeast. Mr. Schulman now seeks to have his default judgment vacated, and Hews and Southeast seek to have the confessed judgment vacated.

### ANALYSIS

#### I. Defendant Schulman's Motion to Strike

Local Rule 105.2(a) requires that "all memoranda in opposition to a motion shall be filed within fourteen days of the service of the motion." If service is by mail, the respondent is permitted an additional three days in accordance with Federal Rule of Civil Procedure 6(e). Mr. Schulman's motion to vacate the default judgment was served on the plaintiff on February 25, 2000. According to Rule 105.2(a), then, H & W had seventeen days—until March 13—to respond. Because H & W did not file a response until March 20 and did not consult either counsel for the defendant or the court, Mr. Schulman has moved to strike the opposition memorandum as untimely.

Although the Rule does require that the memorandum be filed within seventeen days, it does not specify the consequence to be administered if that deadline is not met. In its discretion, therefore, the court may hear an untimely opposition. Because the defendant has not shown that he was harmed in any way by the seven-day delay, his motion to strike will be denied, and the court will consider the plaintiff's response.

#### II. Defendant Schulman's Motion to Vacate the Default Judgment and Dismiss the Case Without Prejudice

Mr. Schulman argues that, pursuant to Federal Rule of Civil Procedure 60(b), this court should vacate the default judgment entered against him. Specifically, Mr. Schulman invokes Rules 60(b)(1), (3), and (6).[6] In relevant part, that Rule states:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud, ... misrepresentation, or other misconduct of an adverse party; ... or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. Pro. 60(b) (2000).

The Fourth Circuit employs a two-step analysis for Rule 60(b) motions. *See National Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 264 (4th Cir.1993) ("The consideration of Rule 60(b) motions proceeds in two stages."). First, the movant must meet three threshold conditions to bring himself within the purview of the Rule. "[I]n order to obtain relief from judgment under Rule 60(b), a moving party must show that his motion is timely, that he has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment set aside." *Park Corp. v. Lexington Ins. Co.*, 812 F.2d 894, 896 (4th Cir.1987). *See also National Credit Union*, 1 F.3d at 264. A fourth threshold requirement, a showing of "exceptional circumstances," is also required in many cases. *See Werner v. Carbo*, 731 F.2d 204, 206–07 (4th Cir.1984) ("To bring himself within Rule 60(b), the movant must make a showing of timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.") (*citing Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir. 1979); *National Credit Union*, 1 F.3d at 264; *Dowell v. State Farm Fire and Casualty Automobile Ins. Co.*, 993 F.2d 46 (4th Cir.

---

6. Mr. Schulman has moved for vacatur under Rule 60(b). Rule 55(c) also provides that "[f]or good cause shown the court may set aside an entry of default and, if judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. Pro. 55(c). Like Rule 60(b), Rule 55(c) requires timely filing and a threshold showing of a meritorious defense. *See Consolidated Masonry & Fireproofing,*

*Inc. v. Wagman Construction Corp.*, 383 F.2d 249, 251 ("Generally a default should be set aside where the moving party acts with reasonable promptness and alleges a meritorious defense."); *Finova Capital Corp. v. Marlo Furniture Co.*, 2000 WL 1025204 (D.Md. June 20, 2000). Because a final judgment of default has been entered against Mr. Schulman, his reliance on Rule 60(b) is appropriate.

1993)). No reason is given for the inclusion or exclusion of the fourth requirement. This court will assume, without deciding, that Mr. Schulman could show "exceptional circumstances" under the facts of this case.

Once the party has met each of those criteria, he then must satisfy the requirements of one of the six sections set forth in Rule 60(b). Mr. Schulman argues that relief is proper under Rule 60(b)(3) because H & W's failure to file the voluntary dismissal constitutes "misconduct" within the meaning of that section. (Mem. Sup. Mot. to Vac. Def. Jud. at 11–14.) Second, he argues that the court's determination of the value of the shipments of shrimp without a hearing was a mistake warranting vacatur of the default judgment under Rule 60(b)(1). (*Id.* at 15–19.) Finally, Mr. Schulman argues that the court should vacate the default judgment pursuant to the power granted to it under Rule 60(b)(6) to "vacate judgments whenever such action is appropriate to accomplish justice." *Klapprott v. U.S.*, 335 U.S. 601, 615, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949).

In response, H & W contends that relief under Rule 60(b)(3) is inappropriate because its failure to file the voluntary dismissal does not constitute "misconduct." (Pl.'s Resp. to Mot. to Vac. Def. Jud. at 13–15.) Further, H & W argues that the motion should be refused because it was filed more than 2 months after the entry of the judgment and is, therefore, untimely. (*Id.* at 12.)

The court will not address these arguments. Rather, the court finds that, even if Schulman's motion were timely filed and the court were inclined to grant relief under Rule 60(b)(1) or (b)(6), it cannot do so because Mr. Schulman has not demonstrated a meritorious defense to the claims asserted against him.[7]

"A meritorious defense requires a proffer of evidence which would permit a finding for the defaulting party or which would establish a valid counterclaim." *Augusta Fiberglass*, 843 F.2d at 812. *See also U.S. v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("all that is necessary to establish the existence of a 'meritorious defense' is a presentation or proffer of evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party."). Thus, the moving party does not have to prove conclusively that he would prevail, only that there is sufficient evidence to permit a court to find in his favor. *See, e.g., Jones v. Phipps*, 39 F.3d 158, 165, (7th Cir.1994) ("A meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis."). Although conclusive

---

7. The finding that Schulman cannot demonstrate a meritorious defense automatically precludes relief under Rule 60(b)(3). *See Schultz v. Butcher*, 24 F.3d 626, 630 (4th Cir.1994) ("to prevail on a Rule 60(b)(3) motion: (1) the moving party must have a meritorious defense; (2) the moving party must prove misconduct by clear and convincing evidence; and (3) the misconduct prevented the moving party from fully presenting its case.") (citing *Square Constr. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981).).

Also, the court notes the discretion it is granted under Rule 60(b) to act in the interests of justice. *See, e.g., Klapprott*, 335 U.S. at 614–15, 69 S.Ct. at 390 ("In simple English, the language of the 'other reason' clause, for all reasons except the five particularly specified, vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice."); *Compton*, 608 F.2d at 102 ("The grounds for relief often overlap and it is difficult, if not inappropriate, in many cases to specify or restrict the claim for relief to a particular itemized ground."). It is, however, only after the moving party has shown a meritorious defense that "the itemized grounds for relief under the Rule 'are to be liberally construed in order to provide relief from the onerous consequences of defaults and default judgments.'" *Id.* That discretion, therefore, is inapplicable here.

Finally, the court notes that, as the basis for his argument under Rule 60(b)(1), Mr. Schulman asserts only that the court made a mistake in accepting the amount of the default. (Mem. Sup. Mot. to Vac. Def. Jud. at 15–19.) Because he claims to have relied on assurances by Hews and Mr. Taylor (likely through their attorney), he may have been able to state a valid claim under the "excusable neglect" portion of that Rule as well. *See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 811 (4th Cir. 1988) ("when the party is blameless, his attorney's neglect qualifies as a 'mistake' or 'excusable neglect' under Rule 60(b)(1)."). Although Mr. White was not Mr. Schulman's lawyer at the time, he is now.

proof is not required, neither is "a bare allegation of a meritorious defense" sufficient. *Wagman*, 383 F.2d at 252 ("The defendant did no more than state that plaintiff breached the contract, a mere conclusion which fell far short of providing the court with a satisfactory explanation of the merits of the defense.").

Mr. Schulman cannot meet this standard. In the original complaint, H & W filed claims against him based on RICO, 18 U.S.C. § 1962, common law fraud, unjust enrichment, and breach of contract. (Comp.¶ 20–39.)[8] In the memorandum supporting his motion to vacate the default judgment, Mr. Schulman does acknowledge that he must demonstrate a meritorious defense, but does not mention the claims filed against him or explain how the facts he alleges would defeat those claims. (Mem. Sup. Mot. to Vac. Def. Jud. at 9–11.) Rather, he describes his version of the events surrounding the shipments of shrimp and argues that he had nothing to do with the final disposition of the shrimp. (*Id.* at 9–10.)

▮ In an effort to prevent inartful pleading from concealing a meritorious defense, the court examined Mr. Schulman's memoranda and affidavit to determine if there were any facts alleged that might disprove the claims made against him. In his affidavit, Mr. Schulman asserts that he ordered a $30,000 shipment of shrimp and, instead, received several tractor-trailer loads full of shrimp worth many times that price. (Schulman Aff. ¶ 7–8.) Further, he states that, after speaking with an employee of H & W, he came to the understanding that H & W had shipped the extra shrimp in the hopes that SBT could find a buyer for it. (*Id.* at ¶ 8–9.) He then stored the large quantity of shrimp in a "cold storage warehouse" for a period of months. (*Id.* at ¶ 8–10.) Upon the execution of the Stock Purchase Agreement and his subsequent departure from Hews

and SBT, some three months after the initial shipment of shrimp was received, Mr. Schulman asserts that his involvement with, and responsibility for, the shrimp ended. (*Id.* at ¶ 11–12.)

Construed very broadly, these assertions might provide a defense to the breach contract claim by demonstrating the lack of a meeting of the minds. Even that, however, is tenuous. Indeed, his contention that the shipments of shrimp "forced" SBT to try to find buyers does not explain why he did not refuse the shrimp in the first place. (Mem. Sup. Mot. to Vac. Def. Jud. at 10.) Neither does his statement that "[i]f any of H & W's shrimp were used to pay debts, or were sold, it was done so without my knowledge, participation, or assent" explain why he accepted the shipments or stored them in the warehouse. (Schulman Aff. at ¶ 11.) When coupled with his actions, Mr. Schulman's statements are neither specific nor complete enough to provide a meritorious defense to the breach of contract claim.

▮ Further, Mr. Schulman contends that he "was neither an officer nor a shareholder in Hews [although his wife owned half of the company]. He was merely an employee, and once his employment relationship and employment activities ceased, Mr. Schulman cannot bear any responsibility for actions taken by others with respect to the shrimp." (Mem. Sup. Mot. to Vac. Def. Jud. at 11.)[9] These statements might help disprove the claim of unjust enrichment. Again, however, they do not explain why he accepted the shrimp on behalf of the company. This argument would be more properly raised were he seeking indemnification by Hews under the terms of his Stock Purchase Agreement. That claim, however, is not relevant here; the statements do not provide a meritorious defense to the unjust enrichment claim.[10]

---

8. A claim of embezzlement was also asserted, but only Mr. Taylor and Hews were named as defendants to that claim. (Comp.¶ 34–36.)

9. It is somewhat unclear at this point exactly how the shrimp were transferred from SBT (for whom Schulman allegedly purchased it) to Hews, who ended up being sued for its value.

10. Because Mr. Schulman cannot assert a meritorious defense to the contract and unjust enrichment claims, on which the amount of the default is based, it is not necessary to examine the fraud and RICO claims.

In addition, Mr. Schulman argues that the court incorrectly determined the amount of the default. If he could have given the court good reason to doubt its earlier conclusion regarding the amount owed, Mr. Schulman might have raised a meritorious defense. *See Augusta Fiberglass,* 843 F.2d at 812 ("Although these statements address the amount, rather than the propriety of Augusta's claim, we believe that taken together they are a sufficient proffer of a meritorious defense."). As it is, Mr. Schulman simply argues that the court was required to hold a hearing to determine the amount owed. Federal Rule of Civil Procedure 55(b)(2), however, states that "the court may conduct such hearings or order such references as it deems necessary...." While that language is not mandatory, Mr. Schulman does cite a series of cases in which courts were required to hold hearings to determine the appropriate measure of damages. In this case, however, no hearing was required. The amount of the default was simply the value of the shipments of shrimp; there were no other damages sought. To support the complaint, H & W provided an affidavit confirming their worth.[11] Mr. Schulman does not provide any evidence to support a claim that the amount owed was different from that supplied by H & W.[12] His argument that a hearing was required is, therefore, insufficient to create a meritorious defense.

Finally, Mr. Schulman spends a significant amount of space in his memoranda detailing the breach by H & W of the Limitations Tolling Agreement and Settlement Agreement. Unfortunately for him, that breach does not provide Mr. Schulman with a defense to the initial claims. While it might excuse his failure to abide by those agreements, it does not alter the fact that H & W was not paid for the shipments of shrimp. The settlement agreements cannot provide a defense to acts committed before they were in place.

Because he cannot demonstrate a meritorious defense to the claims against him, Mr. Schulman's motion to vacate the default judgment will be denied.

A separate Order follows.

---

**11.** Mr. Schulman's objection to the form of the affidavit is not persuasive. (Mem. Sup. Mot. to Vac. Def. Jud. at 18.)

**12.** Indeed, the same amount was used in the confessed judgment note signed by Hews.