**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HELGA V. BONNEY; HVB
INTERNATIONAL, LIMITED; DIRECT
MARKETING CONSULTANTS
INTERNATIONAL, LIMITED,
Plaintiffs-Appellees,

v.

WOLFGANG ROELLE; SAZ MARKETING
SERVICES GMBH, Germany; SAZ

No. 96-1664

DIALOG MARKETING AGENTUR
GMBH,
Defendants-Appellants,

WERNER ZEDNICEK; SAZ MARKETING
SERVICES GMBH, Austria; SAZ
MARKETING SERVICES AG; ADRIAN
RUESCH, Doctor,
Defendants.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-94-417-A)

Argued: March 3, 1997

Decided: July 21, 1997

Before RUSSELL, WILKINS, and HAMILTON, Circuit Judges.

_____

Vacated and remanded with instructions by unpublished per curiam
opinion.

_____

**COUNSEL**

**ARGUED:** Ralph Arthur Taylor, Jr., SHAW, PITTMAN, POTTS & TROWBRIDGE, Washington, D.C., for Appellants. Karen Mary Kennedy, JAMES P. CAMPBELL & ASSOCIATES, P.C., Leesburg, Virginia, for Appellees. **ON BRIEF:** Thomas W. Mitchell, SHAW, PITTMAN, POTTS & TROWBRIDGE, Washington, D.C., for Appellants.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This case arises out of a now terminated joint venture between HVB International, Limited (HVB) and its related company Direct Marketing Consultants International, Limited (DMCI) on the one hand and SAZ Marketing Services GMBH (SAZ) and its related company SAZ Dialog Marketing Agentur GMBH (SAZ Dialog) on the other. At all times relevant to this case, HVB, DMCI, SAZ, and SAZ Dialog were in the business of organizing and executing direct mail campaigns for individual clients, primarily charitable organizations seeking donations. HVB, DMCI, and Helga Bonney (Bonney), the sole stockholder and president of HVB and sole stockholder of DMCI (collectively the plaintiffs), filed suit against SAZ, SAZ Dialog, and Wolfgang Roelle (Roelle), the sole stockholder and president of SAZ and SAZ Dialog (collectively the defendants), in the United States District Court for the Eastern District of Virginia. Based on allegations that the defendants wrongfully and maliciously destroyed the direct mail business of the plaintiffs by illegally luring away its three best clients and breached fiduciary duties owed the joint venture, the suit alleged causes of action for breach of contract, tortious interference with contract, defamation, statutory conspiracy, breach of fiduciary duty and intentional infliction of emotional distress. The district

2

court entered a multi-million dollar default judgment against each defendant on various claims. The defendants moved to vacate the default judgment on the alternative grounds of mistake or excusable neglect and the judgment being void for lack of personal jurisdiction, see Fed. R. Civ. P. 60(b)(1) and (b)(4), which the district court denied. The defendants noted a timely appeal of the district court's order denying their motion. Because the district court abused its discretion in denying the defendants' Rule 60(b) motion, we vacate the district court's order to that effect and remand with instructions to enter an order granting the motion. We further instruct the district court on remand to enter an order awarding the plaintiffs an amount equal to their reasonable attorney's fees in seeking the default judgment and attempting to collect on it through collection procedures. Moreover, we instruct the district court to dismiss this action with respect to Roelle for lack of personal jurisdiction. Finally, we instruct the district court to conduct further proceedings not inconsistent with this opinion, including allowing SAZ and SAZ Dialog to answer the complaint.

I.

The district court relied on the complaint and affidavits alone in deciding the jurisdictional question, without holding an evidentiary hearing. Therefore, we set forth the facts in the light most favorable to the plaintiffs, resolving any factual disputes bearing on the existence of jurisdiction in favor of the plaintiffs. See Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

HVB was incorporated in Maryland by Bonney in 1980. Until its apparent dissolution some time after 1992, HVB organized and executed direct mail campaigns in the United States and Europe. In 1984, Bonney incorporated DMCI under the laws of Bermuda. DMCI operated as the billing and accounting entity for any direct mail services performed by HVB in Europe.

By late 1986, HVB and DMCI had so many accounts requiring the distribution of direct mail in Europe that it sought to enter a joint venture with a European based direct marketing company in order to share the workload. As a consequence, in August 1987, HVB and DMCI entered into a joint venture agreement (the Joint Venture

3

Agreement) with SAZ. SAZ is a German company that organizes and executes direct mail campaigns in Europe.

The Joint Venture Agreement called for SAZ, upon consultation with HVB, to organize and execute direct mail campaigns in Europe for HVB's American clients. It also contained a non-compete provision whereby SAZ was prohibited from competing with HVB and DMCI outside of Germany. Likewise, HVB and DMCI were prohibited from competing with SAZ in Germany. Bonney and Roelle, a German citizen, executed the Joint Venture Agreement on behalf of their respective companies. Bonney signed it in Maryland, and Roelle signed it in Germany.

Pursuant to the Joint Venture Agreement, Roelle obtained fifty percent of DMCI's stock and formed a Swiss subsidiary corporation of DMCI known as Direct Marketing Consultants International AG. The sole role of this company was to bill HVB's clients for their European direct mail marketing campaigns, deposit the funds in Swiss bank accounts, pay suppliers, pay European staff and other overhead related to joint venture clients, and distribute the net profits through DMCI.

In 1988, Roelle formed the corporation SAZ Dialog to act as the creative arm of SAZ. SAZ Dialog drafted text and designed layouts for the direct mailings of joint venture clients, while SAZ performed more physically laborious tasks for joint venture clients such as addressing and stuffing envelopes.

For the most part, the joint venture ran smoothly for the first few years, with HVB moving its principal place of business to Bonney's new home in Upperville, Virginia in January 1989. After January 1989, SAZ Dialog mailed its direct mail campaign proposals to HVB in Virginia. HVB staff would then consult with the clients and return the proposals with suggested changes. HVB had final approval as to the form and content of any mailings.

In April 1989, Roelle attended the wedding of Bonney's daughter at Bonney's home in Upperville, Virginia. Hours before the wedding, Bonney and Roelle held a meeting with a joint venture client regarding the client's mailings for the next three years. In August 1989,

4

Roelle and almost the entire staffs of SAZ and SAZ Dialog who were involved with joint venture clients attended a meeting regarding joint venture business with Bonney and HVB staff in Upperville, Virginia. The meeting lasted several days. The same group attended a similar meeting in Virginia the following August.

By the summer of 1990, Bonney, on behalf of HVB and DMCI, had become dissatisfied with the manner in which Roelle, on behalf of SAZ and SAZ Dialog, was handling the payments received from joint venture clients. Bonney did not believe that HVB and DMCI received proper accountings of joint venture expenses and profits. As a consequence, Bonney and Roelle, on behalf of their respective companies, agreed to terminate the split of profits and losses through DMCI. The parties agreed to maintain their joint venture relationship as to joint venture clients for the near future, but at least through the end of 1991 as to the data processing services. Roelle agreed to divest himself of his stock in DMCI at this time.

In light of the impending termination of the joint venture, in the fall of 1991, HVB began exploring competitive bids for all post joint venture production services for the European direct mail campaigns of its clients. Several companies bid on the services, including SAZ and SAZ Dialog. Concluding that SAZ and SAZ Dialog's bids were not competitive, HVB awarded service contracts to other companies. Shortly thereafter, at the end of 1991, the joint venture dissolved.

Despite this dissolution, by March 1992, a substantial dispute arose between HVB and DMCI on the one hand and SAZ and SAZ Dialog on the other regarding unpaid invoices for services provided by SAZ and SAZ Dialog on behalf of the joint venture. To resolve this dispute and any disputes or claims that may have existed between them at the time, all parties, including Bonney and Roelle, entered into a settlement agreement on May 31, 1992 (the Settlement Agreement). Of particular relevance to the issues before us, the Settlement Agreement specifically obligated SAZ and SAZ Dialog to "behave" in a manner loyal to HVB when dealing with HVB clients. (J.A. 193). In particular, the Settlement Agreement provided that SAZ and SAZ Dialog would refrain from directly dealing with those clients in the future in any form to the extent not required to implement the Settlement Agreement. Finally, the Settlement Agreement provided that any dis-

5

putes arising under its terms must be litigated in St. Gallen, Switzerland under Swiss law.

Also in March 1992, Roelle, on behalf of SAZ and SAZ Dialog, began calling on three of HVB's best clients in alleged violation of the non-compete provisions of the Joint Venture Agreement. Specifically, Roelle, who was outside of Virginia at the time, contacted by letter and telephone the International Fund for Animal Welfare (IFAW), Our Little Brothers and Sisters (OLBS), and the World Mercy Fund, Limited (WMF). These organizations had been HVB clients for four, nine and ten years, respectively, with the average length of each service agreement being two years. OLBS was headquartered in Virginia, while the other two organizations were headquartered outside Virginia. Roelle allegedly encouraged these organizations to do business with SAZ and SAZ Dialog instead of HVB and DMCI by falsely claiming that HVB and DMCI owed SAZ and SAZ Dialog over one million dollars; that HVB and DMCI overcharged clients for its product and services; and that other clients of HVB and DMCI were unhappy with it and, therefore, were threatening to sue.

Between March 31 and April 28, 1992, IFAW, OLBS, and WMF all terminated their business relationships with HVB and DMCI. Prior to Roelle's actions, there were no indications that any of these clients intended to terminate their business relationships with HVB and DMCI. As a result of HVB and DMCI losing IFAW, OLBS, and WMF as clients, HVB and DMCI began having financial difficulties resulting in Bonney being unable since that time to collect any of her $180,000 annual salary. Bonney, in turn, personally filed for bankruptcy. Although the record is unclear, it appears that HVB and DMCI are no longer in business.

On March 30, 1994, the plaintiffs filed a complaint against the defendants in the United States District Court for the Eastern District of Virginia, alleging six counts. Count One alleged tortious interference with contractual relations. Count II alleged defamation. Count III alleged that the defendants unlawfully conspired to secure gain for themselves and to bring about ruin and loss of profit to the plaintiffs. See Va. Code Ann. § 18.2-499. Count IV alleged breach of fiduciary duties and sought a complete accounting. Count V alleged breach of

the non-compete provision of the Joint Venture Agreement, and Count VI alleged intentional infliction of emotional distress with respect to Bonney. The plaintiffs prayed for a minimum of twenty million dollars in compensatory damages and five million dollars in punitive damages. The defendants subsequently received service of process in Germany.

Upon receipt of process, Roelle, on behalf of himself, SAZ, and SAZ Dialog, referred the matter to an attorney in Switzerland. The attorney advised them not to respond in any way, explaining that a response was not required because the Settlement Agreement required the plaintiffs to litigate their claims in Switzerland. According to the attorney, the Settlement Agreement prevented any judgment from being entered against them. Relying on this professional advice, the defendants did not respond to the respective summonses and complaints.

Because the defendants failed to file timely answers, the plaintiffs moved for default judgment on April 7, 1995. The clerk of court noted an entry of default at the plaintiffs' request on April 11, 1995. The district court then referred the motion to a magistrate judge for a report and recommendation on the following issues: (1) whether the defendants received valid service of process; (2) whether the plaintiffs presented a prima facie case as to liability on the various counts in the complaint; and (3) the quantum of damages.

The magistrate judge conducted two hearings, at which he received evidence in support of the allegations of the complaint, including evidence in support of damages. The record before the magistrate judge also contained certification by a German judicial officer that each defendant had been served in accordance with German law by December 27, 1994. After reviewing the record before him, the magistrate judge issued his report and recommendation on August 25, 1995. According to the magistrate judge, the defendants received valid service of process and the plaintiffs presented prima facie proof of liability as to all counts in the complaint except Count VI, alleging intentional infliction of emotional distress. The magistrate judge also determined damages. The magistrate judge ultimately recommended that the district court grant the plaintiffs' motion for default judgment as to Counts I through V as follows:

7

1. As to Count I, judgment against all three defendants, jointly and severally, in favor of DMCI in the amount of $1,062,000.00; in favor of HVB in the amount of $480,000.00; and in favor of Bonney in the amount of $720,000.

2. As to Count II, judgment against defendant Roelle in favor of HVB in the amount of $480,000.00; and in favor of Bonney in the amount of $720,000.

3. As to Count III, judgment against all three defendants, jointly and severally, trebled pursuant to Va. Code § 18.2-500, to result in the following amounts: in favor of DMCI for $3,186,000.00; in favor of HVB in the amount of $1,440,000.00; and in favor of Bonney in the amount of $2,160,000. In addition, the statute provides for a reasonable fee to plaintiffs' counsel, which the magistrate judge recommends be not less then (sic) $15,000.

4. As to count IV, a declaratory judgment that all three defendants owed fiduciary duties to all three plaintiffs which entitle the plaintiffs to account[ings].

5. As to Count V, judgment against all three defendants, jointly and severally, in favor of DMCI in the amount of $1,062,000.00; and in favor of HVB in the amount of $480,000.00.

(J.A. 126-27). Finally, the magistrate judge recommended denying the default judgment motion as to Count VI and dismissing that count.

After ten days and the defendants' failure to file any objections, see Fed. R. Civ. P. 72(b), the plaintiffs moved the district court to approve the magistrate judge's report and recommendation. On September 15, 1995, upon consideration of the magistrate judge's report and recommendation and upon an independent review of the record,

8

the district court adopted the magistrate judge's findings of fact and accepted in toto his recommendations as to disposition and damages.**1**

The defendants received notice of the default judgment in Germany on or about February 22, 1996. Shortly thereafter, the defendants contacted an American law firm regarding the matter. This contact resulted in the defendants filing a motion on March 25, 1996 to set aside the default judgment, see Fed. R. Civ. P. 55(c); 60(b), on the following alternative grounds: (1) the judgment was void for lack of personal jurisdiction and (2) the defendants' failure to answer the complaint was due to erroneous legal advice which amounted to mistake and/or excusable neglect. The motion also challenged whether SAZ received service of process in accordance with Federal Rule of Civil Procedure 4(f), which sets forth the methods of service available upon parties in a foreign country.

The district court entered an order denying the motion on the record before it. The defendants noted a timely appeal from that order, but have not appealed from the default judgment itself. Accordingly, our review only involves inquiry into the propriety of the district court's denial of post judgment relief--not inquiry into the merits of the predicate default judgment. See Swaim v. Molton Co., 73 F.3d 711, 717 (7th Cir. 1996), cert. denied sub nom. , 116 S. Ct. 2499 (1996).

II.

Federal Rule of Civil Procedure 60(b) provides as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other mis-

---

**1** With respect to Count III, the district court awarded $15,000 in attorney's fees.

9

conduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

In the case of a default judgment, Rule 60(b) must be read with due regard for Rule 55(c), which provides that "for good cause shown, the court may set aside an entry of default, and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."

A movant seeking relief from a judgment under Rule 60(b) must make a threshold showing of "`timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances.'" Dowell v. State Farm & Cas. Auto. Ins. Co., 993 F.2d 46, 48 (4th Cir. 1993) (quoting Werner v. Carbo , 731 F.2d 204, 207 (4th Cir. 1984) (footnote omitted)). After a party seeking relief under Rule 60(b) makes this threshold showing, such party must satisfy one of the six enumerated sections of Rule 60(b). See Dowell, 993 F.2d at 48. In the case of a Rule 60(b) motion seeking to set aside a default judgment, our judicial preference for trials on the merits demands that courts resolve any doubt as to the propriety of giving relief in favor of the moving party. See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting, 843 F.2d 808, 811-12 (4th Cir. 1988); United States v. Moradi, 673 F.2d 725, 728 (4th Cir. 1982).

Concluding the defendants did not satisfy one of the six sections of Rule 60(b), the district court denied the defendants' Rule 60(b) motion without addressing whether they had made the required threshold showing. On appeal, the defendants seek vacatur of the district court's decision and our instruction that the district court enter an order granting the motion. The defendants contend the district court erroneously concluded that they had sufficient contacts with Virginia to subject them to personal jurisdiction in Virginia under the Virginia long-arm statute and the Due Process Clause of the Fourteenth Amendment. Alternatively, they contend the district court erroneously concluded that they failed to establish mistake and/or

10

excusable neglect.**2** Finally, they contend they have made the threshold showing necessary to obtain relief under Rule 60(b). We address these contentions in turn.

A.

This court will reverse a district court's denial of a Rule 60(b) motion only upon finding an abuse of discretion. See Werner, 731 F.2d at 206. However, when such denial depends upon an underlying legal conclusion that personal jurisdiction existed over the defendants, review of that conclusion must be de novo. See Ahmed v. United States, 30 F.3d 514, 516 (4th Cir. 1994).

In order for a court to validly exercise personal jurisdiction over a non-resident defendant: (1) a statute must authorize service of process on the non-resident defendant, and (2) the exercise must comport with the Due Process Clause of the Fourteenth Amendment (the Due Process Clause). See Mylan Labs, Inc. v. Azko, N.V. , 2 F.3d 56, 60 (4th Cir. 1993). The district court concluded that the Virginia long-arm statute, Va. Code Ann. § 8.01-328.1, authorized service of process on the defendants and that exercising personal jurisdiction over them would not violate the Due Process Clause of the Fourteenth Amendment. Because the Virginia long-arm statute extends Virginia's jurisdiction over a non-resident "to the extent permissible under the due process clause," English & Smith v. Metzger , 901 F.2d 36, 38 (4th Cir. 1990), it is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction, see, e.g., Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996), cert. denied, 117 S. Ct. 437 (1996) (Maryland forum state); Rossman v. State Farm Mut. Auto. Ins. Co., 832 F.2d 282, 286 (4th Cir. 1987) (Virginia forum state); Columbia Briargate Co. v. First Nat'l Bank of Dallas, 713 F.2d 1052, 1057 (4th Cir. 1983) (South Carolina forum state). Rather, the statutory inquiry necessarily merges with the Constitutional inquiry. Accordingly, our inquiry centers on whether exercising personal jurisdiction over the defendants is consistent with the Due Process Clause. See Stover, 84 F.3d at 136.

_____

**2** The defendants do not attack the district court's finding that SAZ received service of process in accordance with Federal Rule of Civil Procedure 4(f).

A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant has had sufficient "minimum contacts" with the forum state that requiring the defendant to defend his interests in the forum state does not "offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Miliken v. Meyer, 311 U.S. 457, 463 (1940)). Later cases have clarified that the minimum contacts must be"purposeful." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985). This "purposeful" requirement rests on the basic premise that traditional notions of fair play and substantial justice are offended by requiring a non-resident to defend himself in a forum state when the non resi- dent never purposefully availed himself of the privilege of conducting activities within the forum state, thus never invoking the benefits and protections of its laws. See Hanson v. Denckla , 357 U.S. 235, 253 (1958); Stover, 84 F.3d at 136. Moreover, this "purposeful" require- ment "helps ensure that non-residents have fair warning that a particu- lar activity may subject them to litigation within the forum." Plant Genetic Systems, N.V. v. Ciba Seeds, 933 F. Supp. 519, 523 (M.D.N.C. 1996) (citing Burger King, 471 U.S. at 472, and World- Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

As a conceptual matter, a court's exercise of personal jurisdiction may be specific or general. Specific jurisdiction involves the exercise of personal jurisdiction over a defendant in an action arising out of the defendant's contacts with the forum state. See Helicopteros Nacionales de Columbia S.A. v. Hall, 466 U.S. 408, 414 n.8 (1983). Where a court seeks to assert specific jurisdiction over a non-resident defendant, the fair warning requirement inherent in due process still demands that the non-resident defendant have purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking its benefits and protections. Cf. Federal Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 660 (4th Cir. 1989). Even when an action does not arise out of the non-resident defendant's contact with the forum state, the exercise of personal jurisdiction is proper if the non-resident defendant has had continuous and systematic contact with the forum state. See Helicopteros, 466 U.S. at 414-15. This is known as general jurisdiction. See id. at 414 n.9.

Applying these principles with respect to SAZ and SAZ Dialog, we conclude the district court possessed at least general jurisdiction over

12

them. HVB had continuous and systematic contact with Virginia by virtue of its being headquartered in Virginia during the last year of the joint venture. Under our circuit precedent and common law principles governing joint ventures, such contact is attributable to SAZ and SAZ Dialog by virtue of SAZ and SAZ Dialog being joint venturers with HVB. Cf. English & Smith, 901 F.2d at 38-39; Roark v. Hicks, 362 S.E.2d 711, 714 (Va. 1987). Thus, regardless of whether this action actually arose out of SAZ and SAZ Dialog's contacts with Virginia, they had sufficient "minimum contacts" with Virginia such that requiring them to defend their interests in Virginia does not "offend `traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. at 316 (quoting Miliken, 311 U.S. at 463). Accordingly, we hold the district court properly concluded that the default judgment against SAZ and SAZ Dialog was not void for lack of personal jurisdiction.

Applying these same principles with respect to Roelle individually, we conclude the district court lacked either specific or general jurisdiction over him. Specific jurisdiction does not exist because Roelle never purposefully availed himself personally of the privileges of conducting activities within Virginia,3 see Hanson, 357 U.S. at 253, and any allegedly injurious acts that he committed occurred outside of Virginia. See Columbia Briargate Co., 713 F.2d at 1064-65 (if claim against corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred outside the forum state, sound due process principles compel the conclusion that the nexus between the corporate agent and the forum state is too tenuous to support jurisdiction over the agent personally). Likewise, general jurisdiction does not exist because the record is clear that Roelle did not have continuous and systematic contact with Virginia in his individual capacity. Without having purposefully availed himself of the privilege of conducting business activity in Virginia, due process protects Roelle from being involuntarily subjected to litigation in Vir-

_____

**3** Except for his attendance at Bonney's daughter's wedding, all of Roelle's contacts with Virginia were made on behalf of SAZ or SAZ Dialog or both. The plaintiffs do not even suggest that Roelle's attendance at the wedding should subject him to personal jurisdiction in Virginia.

13

ginia. See Hanson, 357 U.S. at 253. Accordingly, we conclude the district court erred in concluding that the default judgment against Roelle was not void for lack of personal jurisdiction.

B.

We now turn to consider whether the district court erred in concluding that the default judgment was not entered as the result of a mistake and/or excusable neglect. See Fed. R. Civ. P. 60(b)(1). The defendants proffered evidence in the form of an affidavit by Roelle that their failure to respond to the respective summonses and complaints resulted from their good faith reliance on the obviously erroneous advice of their legal counsel. This evidence stands undisputed in the record.

Our decision in Augusta Fiberglass Coating v. Fodor Contracting, 843 F.2d 808 (4th Cir. 1988), controls our decision on this issue. In Augusta Fiberglass, we reversed a district court's denial of a defendant's Rule 60(b) motion to set aside a default judgment made on the ground that its failure to respond timely resulted solely from the negligence of its attorney. See id. at 812-13. We remanded the case with instructions to allow the defendant to file its answer promptly and to consider the propriety of other sanctions against the defendant's attorney. See id. Our decision was premised on the rule that "when the party is blameless, his attorney's negligence qualifies as a `mistake' or as `excusable neglect' under Rule 60(b)(1)." Id. at 811. "This focus on the source of the default represents an equitable balance between our preference for trials on the merits and the judicial system's need for finality and efficiency in litigation." Id. We noted that the impact of the rule on the non-movant may be tempered by imposing sanctions against the offending attorney, such as awarding the non-movant's costs and attorney's fees incident to the Rule 60(b) motion. See id.

The present case is on all fours with Augusta Fiberglass. The record is undisputed that the defendants' failure to respond timely to the respective summonses and complaints resulted solely from the erroneous advice of their attorney. The blameless nature of the defendants' actions here, therefore, compels our conclusion that the district

14

court erred in concluding that the defendants failed to demonstrate mistake and/or excusable neglect under Rule 60(b)(1).

C.

Finally, we must consider whether the defendants met the requirements of the threshold showing necessary to obtain Rule 60(b) relief. Accordingly, we must consider: (1) whether the defendants filed their joint motion in a timely fashion; (2) whether the defendants have proffered a meritorious defense; (3) whether granting the motion would unfairly prejudice the plaintiffs; and (4) whether exceptional circumstances are present. See Dowell, 993 F.2d at 48; Augusta Fiberglass, 843 F.2d at 812.

There is little doubt that all the defendants satisfy the first, second and fourth requirements. Shortly after receiving notice in Germany of the default judgment, the defendants obtained the services of an American law firm that resulted in their filing the present Rule 60(b) motion only four weeks after their receipt of notice. Under the circumstances of this case, we discern no undue delay in the filing of the Rule 60(b) motion. As to prejudice, given that the defendants expressly consent in their brief to pay the plaintiffs' reasonable legal fees and costs associated with obtaining the default judgment and collection efforts, we perceive no disadvantage to the plaintiffs "beyond that suffered by any party which loses a quick victory." Augusta Fiberglass, 843 F.2d at 812. Furthermore, exceptional circumstances are present by virtue of the defendants' understandable unfamiliarity with the American legal system.

There is also little doubt that Roelle has shown a meritorious defense--the district court's lack of personal jurisdiction over him. Whether SAZ and SAZ Dialog have shown a meritorious defense is a more difficult issue, but one that must be resolved in their favor. In requiring the proffer of a meritorious defense, "`[t]he underlying concern is . . . whether there is some possibility that the outcome . . . after a full trial will be contrary to the result achieved by the default.'" Id. (quoting 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2967, p. 531 (2d ed. 1983)). The terms of the Settlement Agreement establish just such a possibility. To the extent that any of plaintiffs' claims against SAZ and SAZ Dialog existed prior to the

15

execution of the Settlement Agreement, according to the terms of that agreement, they very well may not have survived its execution. As for plaintiffs' claims against SAZ and SAZ Dialog that allege these companies "behav[ed]" in a disloyal fashion toward HVB when dealing with HVB clients after execution of the Settlement Agreement, the Settlement Agreement contains a forum selection clause that requires the plaintiffs to litigate those claims in St. Gallen, Switzerland under Swiss law. (J.A. 193). In sum, we conclude that SAZ and SAZ Dialog have, at least, proffered a meritorious defense. This conclusion is bolstered by our admonition in Moradi that any doubts as to the propriety of granting relief to a party in the position of SAZ and SAZ Dialog should be resolved in the movant's favor. Moradi , 673 F.2d at 728.

III.

Because the defendants made the threshold showing for obtaining relief under Rule 60(b) and have each satisfied one of the six sections thereunder, we hold that the district court abused its discretion in denying the defendants' joint motion to vacate the default judgment. Accordingly, we vacate the district court's order denying the defendants' joint Rule 60(b) motion and remand with instructions to: (1) enter an order granting such motion; (2) enter an order awarding the plaintiffs an amount equal to their reasonable attorney's fees in seeking the default judgment and attempting to collect on them through collection procedures, see Rule 60(b) (allowing the granting of relief from a judgment on terms that are just); (3) dismiss this action with respect to Roelle for lack of personal jurisdiction; and (4) conduct further proceedings not inconsistent with this opinion, including allowing SAZ and SAZ Dialog to answer the complaint.

VACATED AND REMANDED WITH INSTRUCTIONS